588 F.2d 655
 Thomas L. SELF, Norman Self, and Deborah J. Self, a minor by
her guardian ad litem, Thomas L. Self, and
Christine Smith, and Frank N. Smith,
Jr., Plaintiffs-Appellants,
v.
GENERAL MOTORS CORPORATION, Defendant-Appellee.
 No. 75-1572.
 United States Court of Appeals,
Ninth Circuit.
 March 30, 1978.
Rehearing and Rehearing En Banc Denied Dec. 29, 1978.
 
 Wendy Cole Wilner (argued), Ventura, Cal., for plaintiffs-appellants.
 Richard A. Neumeyer (argued), Grace, Neumeyer & Otto, Los Angeles, Cal., for defendant-appellee.
 Appeal from the United States District Court for the Central District of California.
 Before ELY, CHOY and SNEED, Circuit Judges.
 CHOY, Circuit Judge:
 
 
 1
 This case comes before us on interlocutory appeal from the district court's denial of a motion to remand the case to state court. We reverse.
 
 
 2
 Appellant Christine Smith, a citizen of California, was one of several plaintiffs[1] who sued General Motors Corporation (GM), a citizen of Michigan and Delaware, and Vern Prior, a citizen of California, in California Superior Court for injuries sustained in an auto accident. Before trial, Smith signed a covenant not to execute judgment against Prior. Upon learning of the covenant, GM attempted to remove the case to federal district court, alleging that Prior was no longer a real party in interest and that his joinder was fraudulent. The district judge found that joinder was not fraudulent and that, in spite of the covenant, Prior was still a party to the suit, and remanded the case to the state court because of the continuing lack of complete diversity.[2]
 
 
 3
 The state trial proceeded to final judgment against both Prior and GM. GM then filed a motion for, and was granted, a new trial. GM again attempted to remove the case to federal court, this time on the theory that, since a final judgment had been rendered against Prior, he had been eliminated from the case and complete diversity had thus been created. The federal court remanded once again, however, reasoning that the removal was "premature" because the state appeal process had to be exhausted before Prior's elimination from the case could be deemed truly final. See Saylor v. General Motors Corp., 416 F.Supp. 1173, 1175 (E.D.Ky.1976).
 
 
 4
 Smith then appealed the order granting GM a new trial to the California Court of Appeal and filed a protective appeal on the judgment against Prior. GM also appealed to that court, challenging the trial court's refusal to grant it judgment notwithstanding the verdict. The Court of Appeal affirmed the new trial order and the denial of GM's motion, leaving the disposition of the trial court undisturbed. Self v. General Motors Corp., 42 Cal.App.3d 1, 116 Cal.Rptr. 575 (1974). The California Supreme Court refused to hear the case, thus finalizing the intermediate appellate court's decision.
 
 
 5
 Finally, GM successfully removed the new trial concerning its liability to federal court. The instant appeal, in which Smith challenges the jurisdiction of the federal court to accept the case under the removal provisions of 28 U.S.C. § 1441, followed.[3]Rule that Plaintiff's Pleadings are Determinative
 
 
 6
 It has never been doubted that "the right of removal from the state courts to the United States courts is statutory. A suit commenced in a state court must remain there until cause is shown under some act of Congress for its transfer." Gold-Washing & Water Co. v. Keyes, 96 U.S. 199, 201, 24 L.Ed. 656 (1877). Under the Judiciary Act of March 3, 1875, 18 Stat. 470, ch. 137, either party could remove an action to federal court if his pleadings established that the determination of the controversy involved a question of federal law. See Southern Pac. R. R. Co. v. California, 118 U.S. 109, 111-13, 6 S.Ct. 993, 30 L.Ed. 103 (1886); Pacific R. R. Removal Cases, 115 U.S. 1, 11, 5 S.Ct. 1113, 29 L.Ed. 319 (1885); Ames v. Kansas, 111 U.S. 449, 462, 4 S.Ct. 437, 28 L.Ed. 482 (1884); Railroad Co. v. Mississippi, 102 U.S. 135, 139-40, 26 L.Ed. 96 (1880); Gold-Washing & Water Co., 96 U.S. at 202-04. This rule was changed by the Judiciary Act of March 3, 1887, 24 Stat. 552, ch. 373, As corrected, Judiciary Act of August 13, 1888, 25 Stat. 433, ch. 866, which abolished the plaintiff's right to remove and gave that right exclusively to the defendant. In addition, it was later held that a federal court would look only to the Plaintiff's pleadings in order to determine removability. See Chappell v. Waterworth, 155 U.S. 102, 107-08, 15 S.Ct. 34, 39 L.Ed. 85 (1894); Tennessee v. Union & Planters' Bank, 152 U.S. 454, 460-61, 14 S.Ct. 654, 38 L.Ed. 511 (1894).
 
 
 7
 It was soon established that neither act discussed above allowed a plaintiff to invoke federal jurisdiction by anticipating a federal defense which might be asserted by the defendant. In Louisville & Nashville R. R. v. Mottley, 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126 (1908), the Supreme Court stated:
 
 
 8
 It is not enough that the plaintiff alleges some anticipated defense to his cause of action and asserts that the defense is invalidated by some provision of the Constitution of the United States. Although such allegations show that very likely, in the course of the litigation, a question under the Constitution would arise, they do not show that the suit, that is, the plaintiff's original cause of action, arises under the Constitution.
 
 
 9
 As explained in Mottley, it is clear that the existence of federal jurisdiction is to be determined solely by an examination of the plaintiff's case, without recourse to the defendant's pleadings. See Phillips Petroleum Co. v. Texaco Inc., 415 U.S. 125, 127-28, 94 S.Ct. 1002, 39 L.Ed.2d 209 (1974); Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 672-73, 70 S.Ct. 876, 94 L.Ed. 1194 (1950); Gully v. First Nat'l Bank, 299 U.S. 109, 112-13, 57 S.Ct. 96, 81 L.Ed. 70 (1936); Taylor v. Anderson, 234 U.S. 74, 34 S.Ct. 724, 58 L.Ed. 1218 (1914); Joy v. City of St. Louis, 201 U.S. 332, 340, 26 S.Ct. 478, 50 L.Ed. 776 (1906); Tennessee v. Union & Planters' Bank, 152 U.S. at 454, 14 S.Ct. 654.
 
 
 10
 "Voluntary-Involuntary" Rule
 
 
 11
 In another line of cases, the Supreme Court developed the "voluntary-involuntary" rule which requires that a suit remain in state court unless a "voluntary" act of the plaintiff brings about a change that renders the case removable. The rule is said to originate in the nineteenth century case of Powers v. Chesapeake & O. Ry., 169 U.S. 92, 18 S.Ct. 264, 42 L.Ed. 673 (1898). In Powers, when the action originally appeared in state court, there was not complete diversity between the parties. After the time period for removal to federal court had elapsed, however, the plaintiff dismissed the non-diverse defendant, leaving only diverse parties remaining in the action. In allowing removal to federal court, the Supreme Court held that the time period for removal begins to run only after complete diversity occurs and that the plaintiff's delay in dismissing one of the defendants did not defeat removal.
 
 
 12
 The next case in the development of the voluntary-involuntary rule was Whitcomb v. Smithson, 175 U.S. 635, 20 S.Ct. 248, 44 L.Ed. 303 (1900), where a directed verdict had been ordered in favor of the non-diverse defendant, arguably making the case appropriate for removal to federal court. The Court found the lower court's directed verdict in Whitcomb to require a result different from that resulting from the plaintiff's discontinuance in Powers:
 
 
 13
 This (the directed verdict) was a ruling on the merits, and not a ruling on the question of jurisdiction. It was adverse to plaintiff, and without his assent, and the trial court rightly held that it did not operate to make the cause then removable and thereby to enable the other defendants to prevent plaintiff from taking a verdict against them.
 
 
 14
 175 U.S. at 638, 20 S.Ct. at 250. That only a voluntary act of the plaintiff could bring about removal to federal court became the established rule in later cases. See American Car & Foundry Co. v. Kettelhake, 236 U.S. 311, 314-16, 35 S.Ct. 355, 59 L.Ed. 594 (1915); Lathrop, Shea & Henwood Co. v. Interior Constr. & Improvement Co., 215 U.S. 246, 30 S.Ct. 76, 54 L.Ed. 177 (1909); Kansas City Suburban Belt Ry. v. Herman, 187 U.S. 63, 69-70, 23 S.Ct. 24, 47 L.Ed. 76 (1902); Southern Pac. Co. v. Haight, 126 F.2d 900, 903-04 (9th Cir.), Cert. denied, 317 U.S. 676, 63 S.Ct. 154, 87 L.Ed. 542 (1942); Weems v. Louis Dreyfus Corp., 380 F.2d 545, 547 (5th Cir. 1967); 1A Moore's Federal Practice P 0.168(3. 5), at 487 (2d ed. 1974). See generally Note, Removal of Suits to Federal Courts After the Statutory Deadline: An Old Formula Re-examined, 60 Harv.L.Rev. 959 (1947).[4]
 
 
 15
 It has been suggested that the rule promotes judicial efficiency by "prevent(ing) removal of those cases in which the issue of the resident defendant's dismissal has not been finally determined in the state courts." Weems, 380 F.2d at 546. See Saylor, 416 F.Supp. at 1175; Ennis v. Queen Ins. Co., 364 F.Supp. 964, 966 (W.D.Tenn.1973). If the finality of state court proceedings were the basis for the rule, it would seem that once the appellate process were ended in the state courts, removal would be possible. The Supreme Court, however, apparently does not rely on this basis as evidenced by Lathrop, Shea & Co., 215 U.S. at 249-51, 30 S.Ct. 76, where the voluntary-involuntary rule was invoked to prohibit removal even though the state appellate process was complete.
 
 Common Origins of Both Rules
 
 16
 We must conclude that the voluntary-involuntary rule is based on a formalistic approach to pleadings similar to the Mottley line of cases and applies to the diversity requirement of 28 U.S.C. § 1332 in the same fashion that Mottley applies to the federal question requirement of 28 U.S.C. § 1331.
 
 
 17
 In Alabama Great Southern Ry. v. Thompson, 200 U.S. 206, 26 S.Ct. 161, 50 L.Ed. 441 (1906), a diversity case, the Supreme Court read Powers and Whitcomb to mean that "the right to remove depend(s) upon the case made In the complaint against both defendants jointly." 200 U.S. at 217, 26 S.Ct. at 165 (emphasis supplied). Thus, in determining the removability of a suit based on diversity of citizenship, the Court just as with allegations of a federal question in Mottley looked only to the plaintiff's pleadings. See Note, Removal of Causes, 33 Harv.L.Rev. 970 (1920).
 
 
 18
 The common origins of the Powers-Whitcomb and Mottley lines of authority, and the rule of decision governing the instant case, are perhaps best illustrated by the analysis in Great Northern Ry. v. Alexander,246 U.S. 276, 38 S.Ct. 237, 62 L.Ed. 713 (1918). There, a state court wrongful death action was not removable at the outset because it was brought under the Federal Employers' Liability Act (FELA), which provides that the plaintiff's choice of forum is absolute and that cases may not be removed for any reason. At the close of the plaintiff's case, the defendant attempted to remove the case, contending that, because the plaintiff had failed to prove that the decedent was involved in interstate commerce at the time of his death, FELA did not apply at all. The defendant reasoned that the complaint should be read as if FELA had never been mentioned, and that the case was removable by virtue of the diverse citizenship of the parties. The Supreme Court replied as follows:
 
 
 19
 But unfortunately for the validity of this contention it has been frequently decided by this court that whether a case arising, as this one does, under a law of the United States is removable or not, when it is commenced (there being no claim of fraudulent attempt to evade removal), is to be determined by the allegations of the complaint or petition and that if the case is not then removable it cannot be made removable by any statement in the petition for removal or in subsequent pleadings by the defendant. Tennessee v. Union & Planters' Bank, 152 U.S. 454 (14 S.Ct. 654, 38 L.Ed. 511); Chappell v. Waterworth, 155 U.S. 102 (15 S.Ct. 34, 39 L.Ed. 85); Texas & Pacific Ry. Co. v. Cody, 166 U.S. 606 (17 S.Ct. 703, 41 L.Ed. 1132); Taylor v. Anderson, 234 U.S. 74 (34 S.Ct. 724, 58 L.Ed. 1218).
 
 
 20
 It is also settled that a case, arising under the laws of the United States, nonremovable on the complaint when commenced, cannot be converted into a removable one by evidence of the defendant or by an order of the court upon any issue tried upon the merits, but that such conversion can only be accomplished by the voluntary amendment of his pleadings by the plaintiff or, where the case is not removable because of joinder of defendants, by the voluntary dismissal or nonsuit by him of a party or of parties defendant. Kansas City &c. Ry. Co. v. Herman, 187 U.S. 63 (23 S.Ct. 24, 47 L.Ed. 76); Alabama Great Southern Ry. Co. v. Thompson, 200 U.S. 206 (26 S.Ct. 161, 50 L.Ed. 441); Lathrop, Shea & Henwood Co. v. Interior Construction Co., 215 U.S. 246 (30 S.Ct. 76, 54 L.Ed. 177); American Car & Foundry Co. v. Kettelhake, 236 U.S. 311 (35 S.Ct. 355, 59 L.Ed. 594).
 
 
 21
 The obvious principle of these decisions is that, in the absence of a fraudulent purpose to defeat removal, the plaintiff may by the allegations of his complaint determine the status with respect to removability of a case, arising under a law of the United States, when it is commenced, and that this power to determine the removability of his case continues with the plaintiff throughout the litigation, so that whether such a case non-removable when commenced shall afterwards become removable depends not upon what the defendant may allege or prove or what the court may, after hearing upon the merits, In invitum, order, but solely upon the form which the plaintiff by his voluntary action shall give to the pleadings in the case as it progresses towards a conclusion.
 
 
 22
 246 U.S. at 281-82, 38 S.Ct. at 239. Thus, the determination of whether federal subject-matter jurisdiction exists depends only upon plaintiff's complaint and the context in which it is found. See Haight, 126 F.2d 900 Passim.[5]
 
 
 23
 In the instant case, a final judgment against Prior removed him from the proceedings. A final judgment is an order by the court and is classically a decision made on the merits of the case. The plaintiff, Smith, has neither dismissed nor discontinued the case against Prior, voluntarily or otherwise. We cannot distinguish the line of authority which established the voluntary-involuntary rule, and so we must reverse.[6]
 
 
 24
 REVERSED and REMANDED, with direction to remand the case to the appropriate California Superior Court.
 
 ELY, Circuit Judge, dissenting:
 
 25
 I respectfully dissent.
 
 
 26
 The majority writes that "(i)f this court were free to fashion its own application of the voluntary-involuntary rule, we might well be persuaded that on the facts of this case, the rule should be modified to allow removal. Lacking that freedom, however, we are obliged to follow the formalistic approach adopted by the Supreme Court." Majority Opinion, at footnote 6. I submit that my Brothers bind themselves too easily with the supposed manacles of ancient precedent when sound judicial policy and the facts of this case do, indeed, demand a different result.
 
 
 27
 The crux of my disagreement with the result reached by the majority stems from the wooden and rigid interpretation which, I believe, has been unnecessarily and improvidently accorded by my Brothers to the voluntary-involuntary rule. I cannot, absent plain and unequivocal direction from the Supreme Court, accede to the proposition that the Court has fashioned and perpetuated a formalistic and artificial rule of procedure devoid of any supporting rationale.[1] In my view, the voluntary-involuntary rule rests upon the solid and salutary foundations of comity and judicial efficiency. The principal consideration is finality. The operation of the voluntary-involuntary doctrine generally has the effect of preventing removal in those cases in which the correctness of the resident defendant's[2] elimination from the action has not yet been determined conclusively in the state courts. When a plaintiff voluntarily dismisses a resident defendant from the case, the elimination of that defendant is final. Quite obviously, since the action was voluntarily taken by the plaintiff, no appeal by the plaintiff will prevent the dismissal from being conclusive. Complete removal diversity between the plaintiff and the remaining nonresident defendants is assured.[3] If, however, the resident defendant is eliminated from the case by action of the court, involuntary to the plaintiff, the plaintiff generally may pursue an appeal, the pendency of which prevents complete diversity from being assured. The plaintiff quite possibly could prevail in the appeal, thereby reinstating the resident defendant as a proper party and destroying the strict diversity required for removal.
 
 
 28
 Consequently, absent diversity being conclusively established by a final ruling of the state courts on the issue of the elimination of the resident defendant, removal to a federal forum is premature and improper. The filing of the petition for removal may, in fact, prevent the plaintiff from pursuing an appeal to which he is entitled under state law. 28 U.S.C. § 1446(e) provides that upon the filing and serving of the necessary papers "the State Court shall proceed no further unless and until the case is remanded." As a result, the plaintiff may be stymied in any attempt to obtain state appellate review of the action eliminating the resident defendant because the state courts are deprived of jurisdiction unless and until the case is remanded from the federal court. See 14 Wright & Miller, Federal Practice and Procedure, § 3737; Squibb-Mathieson International Corp. v. St. Paul Mercury Ins. Co., 238 F.Supp. 598, 599 (S.D.N.Y.1965). The federal court is placed in the untenable position of being unable to determine if the strict diversity required for removal jurisdiction exists unless and until it relinquishes its jurisdiction[4] by remanding to the state courts for the completion of the appellate process. In this "catch-22" situation, the federal court plainly must remand in order that the resident defendant's elimination from the case may become final. A removal petition filed before exhaustion of state appellate avenues is no more than an exercise in futility. If, on the other hand, the state appellate process proceeds unabated and the plaintiff prevails, the reinstatement of the resident defendant would destroy the federal court's jurisdiction. In either case, common sense notions of comity require the federal court to remand any case prematurely removed before the resident defendant's status in the case is finally determined, either by expiration of the time for appeal or by a decision rendered by the state appellate courts.
 
 
 29
 Considerations of judicial efficiency are also deeply imbedded in the voluntary-involuntary doctrine. First, it is clearly inefficient for the federal court to expend scarce judicial resources on a case in which diversity jurisdiction is not assured at the time of removal. Second, the voluntary-involuntary distinction is a useful, although imprecise, method of avoiding the duplication of judicial proceedings. Voluntary dismissals rarely occur after a trial's beginning. No state court proceedings need be duplicated after removal to a federal court. Involuntary dismissals, however, quite frequently occur after extensive proceedings in the trial court. For example, assume that after the plaintiff's presentation of evidence in the state trial, the resident defendant is granted a directed verdict and the plaintiff's time for appeal expires before a judgment is rendered on the plaintiff's case against the nonresident defendant. It would still be inefficient to allow the nonresident to remove, notwithstanding the finality of the elimination of the resident defendant. The plaintiff would have to repeat the entire presentation of his evidence. The involuntary portion of the doctrine prevents this from occurring. This situation is, however, quite different from that wherein a judgment is rendered against both the resident and nonresident defendants, but a new trial is ordered by the trial or appellate court only as to the nonresident. No duplication occurs here, even though the elimination of the resident defendant was involuntary as to the plaintiff.[5]
 
 
 30
 The voluntary-involuntary doctrine serves to effectuate, in most instances, its intertwined underlying policies of efficiency and final severance of the resident defendant from the case before removal is allowed. Yet, when, as here, the appellate process is complete and the elimination of the resident defendant from the case final, and no duplication of state proceedings would be required, continued wooden adherence to the formal procedural distinction of the doctrine is unwarranted and, in fact, is antithetical to the very rationale of the doctrine itself. Repetition of the shibboleth after the need for it has evaporated elevates the imperfect vehicle over the policies it is designated to carry. The nonresident defendant's right to a federal forum is frustrated for no good reason.
 
 
 31
 In the Supreme Court decisions which the majority finds so compelling, I find nothing to convince me that a rigid and formalistic gloss for the rule was intended then, or required now, when sound considerations of policy should require a contrary result. As my Brothers write, the fountainheads are Powers v. Chesapeake & O. Ry., 169 U.S. 92, 18 S.Ct. 264, 42 L.Ed. 673 (1898) and Whitcomb v. Smithson, 175 U.S. 635, 20 S.Ct. 248, 44 L.Ed. 303 (1900). Neither case is particularly helpful in elucidating the contours of the doctrine. Subsequent Supreme Court cases, however, clearly indicate that the doctrine has as its policy cornerstone the considerations of finality and efficiency. See, e. g., American Car & Foundry Co. v. Kettelhake, 236 U.S. 311, 316-17, 35 S.Ct. 355, 59 L.Ed. 594 (1915); Lathrop, Shea & Henwood Co. v. Interior Constr. & Improvement Co., 215 U.S. 246, 248, 30 S.Ct. 76, 54 L.Ed. 177 (1909); Kansas City Suburban Belt Ry. v. Herman, 187 U.S. 63, 23 S.Ct. 24, 47 L.Ed. 76 (1902). A plaintiff's unextinguished right of appeal, together with possible duplication of proceedings, have been identified repeatedly by legal commentators as the underlying basis for the decisions in these cases. See Note, The Effect of Section 1446(b) on the Nonresident's Right to Remove, 115 U.Penn.L.Rev. 264, 266-67, 274 (1966); Note, Federal Practice: Removal after Resident Defendant is Involuntarily Dismissed, 17 Okla.L.Rev. 336, 337-40 (1964); Note, Removal of Suits to Federal Courts after the Statutory Deadline, 60 Harv.L.Rev. 959, 961-63 (1947). Yet, the majority states that the doctrine cannot possibly be grounded on these considerations since in Lathrop, Shea & Henwood Co., supra, the "voluntary-involuntary rule was invoked to prohibit removal even though the state appellate process was complete."[6] State appeals may have been exhausted there, although that much is not at all clear.[7] Nonetheless, telling language in the Court's later Kettelhake decision indicates that the voluntary-involuntary doctrine is only a rough vehicle of convenience to determine finality of the dismissal.
 
 
 32
 "(W)here there is a joint cause of action against defendants resident of the same State with the plaintiff and a non-resident defendant, it must appear, to make the case a removable one as to a non-resident defendant because of dismissal as to resident defendants, that the discontinuance as to such defendants was voluntary on the part of the plaintiff, And that such action has taken the resident defendants out of the case, so as to leave a controversy wholly between the plaintiff and the non-resident defendant. We do not think that situation is shown by this record.
 
 
 33
 The element upon which the decision in the Powers Case depended the voluntary dismissal And consequent conclusion of the suit in the state court as to the resident defendants is not present in this case." 236 U.S. 311, 316-17, 35 S.Ct. 355, 356. (emphasis added).
 
 
 34
 Moreover, a never overruled decision issued by the Court far in advance of the acknowledged origins of the voluntary-involuntary doctrine in Powers and Whitcomb plainly emphasizes the relevant considerations in determining removal issues raised by the elimination of resident defendants from an action. In Yulee v. Vose, 99 U.S. 539, 25 L.Ed. 355 (1878), a judgment was entered against both the resident and nonresident defendants. On appeal, the judgment was affirmed as to the resident defendants but reversed and remanded for a new trial as to the nonresident defendant. Before commencement of the new trial, the nonresident defendant attempted to remove. In reviewing the denial of removal, the Supreme Court held that removal was proper, the dismissal of the resident defendants having been adjudicated finally by the state appellate process and no new trial having yet commenced against the nonresident defendant when the removal attempt was made. Id. at 544-45. Although the severance of the resident defendant was by the action of the state trial court, involuntary as to the plaintiff, removal was allowed. The court specifically noted the finality of the dismissal and the fact that the new trial had not yet begun, ensuring that no duplication of state proceedings would be required. These Supreme Court decisions hardly constitute such a firm mandate as to require us to conclude that the Supreme Court has unequivocally directed us to apply a mechanical and inflexible rule of procedure when rational judicial policy dictates flexibility in implementing the purpose of the doctrine. On the contrary, the significant authorities evidence the paramount importance of focusing on the elements of finality and efficiency when considering these types of removal problems.
 
 
 35
 I am likewise unconvinced by the majority's reliance on the Mottley line of cases. The supposed common origins of the voluntary-involuntary doctrine with the admittedly rigid litany that federal question jurisdiction depends solely on the plaintiff's pleadings is, in my opinion, an inadequate reason for endowing diversity removal doctrine with the same inflexibility when a suitable and rational theory is so apparent.
 
 
 36
 Moreover, the approach and rationale I suggest is hardly original. Of that, abundant evidence is found in numerous decisions of federal appellate and trial courts which have applied the voluntary-involuntary rule and in which the presence of appellate claims by the plaintiff prevented premature removal before complete diversity was assured. See, e. g., Weems v. Louis Dreyfus Corp., 380 F.2d 545, 546-48 (5th Cir. 1967); Saylor v. General Motors Corp., 416 F.Supp. 1173, 1175 (E.D.Ky.1976); Warren Bros. Co. v. Community Bldg. Corp. of Atlanta, Inc., 386 F.Supp. 656, 661 (M.D.N.C.1974); Ennis v. Queen Ins. Co. of America, 364 F.Supp. 964, 966 (W.D.Tenn.1973); Continental Oil Co. v. PPG Indus. Inc., 355 F.Supp. 1183, 1185-86 (S.D.Tex.1973); Squibb-Mathieson International Corp. v. St. Paul Mercury Ins. Co., 238 F.Supp. 598, 599 (S.D.N.Y.1965).
 
 
 37
 The foregoing analysis demonstrates, I believe, that the voluntary-involuntary rule does not, and should not, justifiably preclude removal here. The related twin considerations of finality and efficiency ineluctably compel the conclusion that removal was proper. The imprecise methodology of the rule itself should not be allowed to subvert the very reason for its existence. Viewing the state trial and appellate proceedings as a whole, it is plain that only General Motors, the nonresident defendant, was granted a new trial. The judgment against Prior is final, all appeals having been exhausted, and it is accompanied by a covenant not to execute against Prior, signed by the plaintiff. Consequently, Prior's continued joinder is a sham and should be ignored in determining diversity. There is no "reasonable basis for predicting that the state law might impose liability" here on the same cause of action for which plaintiff already has a final judgment against Prior and with respect to which has entered into a covenant not to execute.[8] Continental Oil Co. v. PPG Indus., Inc., supra, at 1186; Saylor v. General Motors Corp., supra, at 1175. Moreover, I cannot see that any state proceedings will be duplicated, since while a new trial has been ordered, it has not yet commenced. This situation is, in fact, remarkably similar to that in Yulee v. Vose, supra. I would reach the same result as the Court did there. I can find no adequate justification here for refusing General Motors its right to litigate in a federal forum.
 
 
 38
 The District Court's refusal to remand the case to state court was, in my judgment, eminently correct.
 
 
 39
 I would affirm.
 
 
 
 [1]
 Of the five plaintiffs who originally brought suit, Smith is the only one pursuing this appeal
 
 
 [2]
 Since this finding is not clearly erroneous, Fed.R.Civ.P. 52(a), the covenant not to execute judgment has no bearing on the disposition of this appeal
 
 
 [3]
 Smith also claims that, under California's scheme of comparative negligence, Prior is an indispensable party for the purpose of determining proportionate liability. Since we hold that the case must be dismissed for lack of federal jurisdiction, we need not reach this issue
 
 
 [4]
 The proper time for removal is governed by 28 U.S.C. § 1446(b). This statute was amended to substantially its present form in 1949. Act of May 24, 1949, 63 Stat. 101, ch. 139, § 83. The voluntary-involuntary rule was not altered by that amendment. See 2 U.S.Code Cong.Serv. 1268, 81st Cong., 1st Sess. (1949); Weems v. Louis Dreyfus Corp., 380 F.2d 545, 547-48 (5th Cir. 1967). There is, however, authority to the contrary. See Lyon v. Illinois Central R. R., 228 F.Supp. 810, 811 (S.D.Miss.1964); Parkhill Produce Co. v. Pecos Valley S. Ry., 196 F.Supp. 404, 406-07 (S.D.Tex.1961); Bradley v. Halliburton Oil Well Cementing Co., 100 F.Supp. 913, 916-17 (E.D.Okl.1951). Since Weems is a Fifth Circuit opinion, however, Lyon and Parkhill Produce, both decided by district courts in that circuit, are effectively overruled
 
 
 [5]
 In Haight, the plaintiff filed a complaint in state court against Southern Pacific Company and two fictitiously named individual defendants. The case, as it appeared on the face of the complaint, was not removable because, even though Haight and Southern Pacific were diverse, Haight and the individual defendants were not. At the time Haight informed the court that she was ready to proceed with trial, however, she had not served process on the individual defendants, and Southern Pacific immediately made its motion for removal. The following day, Haight named and served the other two defendants. In sustaining federal jurisdiction, this court viewed Haight's action as a voluntary abandonment of the claim against the two individual defendants which rendered the case between Haight and Southern Pacific immediately removable. While Haight had never formally amended her pleadings, the court looked to her actions and the events surrounding her case, in addition to her pleadings. See 126 F.2d at 903-04
 
 
 [6]
 While GM recognizes that a distinction is made between the voluntary and involuntary acts of a plaintiff, it has made a determined effort to explain why the facts of the present appeal argue for a relaxation of the formal rule. GM has pointed out that a final judgment has been rendered against the non-diverse party so that on retrial the only parties in interest will be diverse citizens. Consequently, on the face of the plaintiff's pleadings, the same diversity exists in this case that would exist if the plaintiff had voluntarily dismissed the non-diverse party
 If this court were free to fashion its own application of the voluntary-involuntary rule, we might well be persuaded that on the facts of this case, the rule should be modified to allow removal. Lacking that freedom, however, we are obliged to follow the formalistic approach adopted by the Supreme Court.
 
 
 [1]
 The Supreme Court may, of course, prescribe mechanical and inflexible rules of procedure. See, e. g., United States v. Indrelunas, 411 U.S. 216, 93 S.Ct. 1562, 36 L.Ed.2d 202 (1973) (Rule 58 "separate document" requirement). The rigid gloss placed on Rule 58 was, however, made absolutely clear by the Court and was designed to serve a carefully specified objective, I. e., establishing the date of a judgment with certainty
 
 
 [2]
 Recognizing that residency is not the equivalent of citizenship for purposes of determining diversity, defendants will nonetheless be denominated either as "resident" or "nonresident" since these terms generally have been used in past removal decisions
 The terms "resident" or "nonresident" defendants have a dual meaning in removal controversies. When dealing with the removal of an action to federal court in which federal subject matter jurisdiction is predicated upon diversity of citizenship, there are two distinct factors determinant of whether diversity jurisdiction exists. 28 U.S.C. § 1441 provides in pertinent part:
 § 1441. Actions removable generally
 (a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.
 (b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.
 Section (a) requires that the United States District Court must have original jurisdiction of the action. Diversity jurisdiction under 28 U.S.C. § 1332 has been interpreted to require complete diversity. No party plaintiff may be a citizen of the same state as any of the parties defendant. Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). Additionally, section (b) imposes the further requirement that none of the defendants may be a citizen of the state in which the action was originally brought. Accordingly, removal based on diversity jurisdiction is improper if (1) any defendant is of the same citizenship as any of the plaintiffs, or (2) any defendant is a citizen of the state in which the action was originally brought. The term "resident defendant" is used here to denote any defendant whose presence prevents removal, I. e., the defendant who is a citizen of the same state as any plaintiff or a citizen of the state wherein the action was begun. A "nonresident defendant" suffers from neither disability preventing removal.
 
 
 [3]
 The requirements for diversity in the particularized context of removal are described in note 2, Supra
 
 
 [4]
 The federal court acquires jurisdiction when removal is effected. Removal is effected by filing the petition for removal and bond in the federal court, filing a copy of the petition with the state court, and giving written notice to all adverse parties. No court order directing removal is required. Flowers v. Aetna Cas. & Sur. Co., 163 F.2d 411 (6th Cir. 1947). The federal court then has, of course, the power to determine its jurisdiction. United States v. United Mine Workers of America, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947)
 
 
 [5]
 This example assumes, of course, that, as in the situation now before us, the judgment against the resident defendant(s) is final in the sense that no appeals or rights of appeal are extant and the new trial of the nonresident defendant has not yet commenced
 
 
 [6]
 Majority opinion at 657
 
 
 [7]
 The Supreme Court's decision in Lathrop, Shea & Henwood, supra, is rather obscure on the issue of whether the state appellate process had been completed with respect to plaintiff's appeal of the dismissal of the resident defendant. At least three commentators have viewed the holding of this decision, that removal was improper, as ultimately resting on plaintiff's right of state appellate review, a right that had not yet been exhausted. See Note, The Effect of Section 1446(b) on the Nonresident's Right to Remove, 115 U.Penn.L.Rev. 264, 266 & fn. 13 (1966); Note, Federal Practice: Removal after Resident Defendant is Involuntarily Dismissed, 17 Okla.L.Rev. 336, 337 (1964); Note, Removal of Suits to Federal Courts after the Statutory Deadline, 60 Harv.L.Rev. 959, 962 & fn. 21 (1947)
 
 
 [8]
 Appellant also claims that Prior is an indispensable party for the purpose of allocating proportionate liability under California's comparative negligence scheme and that, consequently, his continued joinder is not sham or frivolous. The California Supreme Court's recent decision in American Motorcycle Ass'n v. Superior Court, 20 Cal.3d 578, 143 Cal.Rptr. 692, 574 P.2d 763 (No. LA 30737, Feb. 9, 1978), indicates otherwise. There, the California Supreme Court held that although the contributory negligence of the plaintiff must be proportioned with respect to the combined negligence of the plaintiff and all of the tortfeasors, that determination could be made in the absence of one or more of the tortfeasors. Id., at fn. 2. See also Note, Products Liability, Comparative Negligence, and the Allocation of Damages Among Multiple Defendants, 50 S.Cal.L.Rev. 73, 105 n. 184 (1976). Moreover, under California's Motorcycle decision, the liability of the defendants is joint and several. Consequently, the actual amount of the plaintiff's damages will not vary according to which of the tortfeasors happen to be before the court as defendants. Here, the appellant could not be prejudiced by the absence of Prior from the action
 I also note that the defendant General Motors apparently may also not join Prior. The retention of joint and several liability in the California comparative negligence scheme precludes General Motors from attempting to join Prior as a co-defendant. See also Safeway Stores, Inc. v. Nest-Kart, 63 Cal.App.3d 934, 134 Cal.Rptr. 150 (1976); Stambaugh v. Superior Court, 62 Cal.App.3d 231, 132 Cal.Rptr. 843 (1976). Moreover, although the Motorcycle decision authorizes joined defendants to file cross-complaints against other joined defendants or to implead unjoined tortfeasors for partial indemnification, Prior has already suffered an adverse final judgment and has entered into a covenant with the appellant not to execute on that judgment. This is, in effect, a final, irrevocable settlement. After Motorcycle, a settling defendant is discharged from any liability for partial or comparative indemnification that may be sought by a concurrent tortfeasor. See also Stambaugh v. Superior Court, supra. California's comparative negligence system does not require or permit Prior to participate further in the action.
 For an extensive analysis of the California comparative negligence system as it relates to multiple defendants, an analysis foreshadowing the Motorcycle decision, See Note, Products Liability, Comparative Negligence, and the Allocation of Damages Among Multiple Defendants, 50 S.Cal.L.Rev. 73 (1976).