Gus POULOS and A.G.P. Marketing,
Plaintiffs–Appellants,

v.

NAAS FOODS, INCORPORATED and Ranks, Hovis, McDougall, PLC Group (RHM Holdings U.S.A. Incorporated), Defendants–Appellees.

No. 90–3837.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 17, 1991.

Decided March 18, 1992.

Robert Sutton (argued), Sutton & Kelly, Milwaukee, Wis., for plaintiffs-appellants.

Michael E. Husmann, John E. Flanagan (argued), Michael, Best & Friedrich, Milwaukee, Wis., for defendants-appellees.

Before BAUER, Chief Judge, and CUDAHY and EASTERBROOK, Circuit Judges.

CUDAHY, Circuit Judge.

We are faced with an interesting problem regarding our diversity jurisdiction. Gus Poulos, a resident (and citizen) of Illinois, worked as a sales representative for Naas Foods, whose principal place of business is in Indiana. Ranks, Hovis, McDougall, PLC Group (RHM Holdings U.S.A. Inc.) (RHM) owns Naas and has its principal place of business in Illinois. Naas terminated its relationship with Poulos, apparently unhappy with his performance. Soon thereafter Poulos sued both Naas and RHM in Wisconsin state court, alleging violations of the Wisconsin Fair Dealership Law, Wis. Stat. § 135 (1989–90) (WFDL).

After a fair amount of discovery, the Wisconsin court granted summary judgment for RHM, finding that Poulos had failed to present any evidence to support holding RHM liable under the WFDL. Nonetheless, the court gave Poulos leave to reinstate his claim against RHM should relevant evidence turn up. With RHM gone from the case, Naas removed the proceedings to the federal district court for the Eastern District of Wisconsin. Naas alleged that the citizenship of the remaining parties was completely diverse[1] and that the amount in controversy exceeded $50,000. See 28 U.S.C. § 1332(a) (1988).

Poulos moved to remand the case to state court. He argued that although the state court had dismissed RHM from the case, removal was inappropriate because the dismissal was involuntary. The district

---

1. The form of Naas' petition for removal was incorrect. Naas alleged that Gus Poulos was a "resident" of Illinois. Diversity jurisdiction, however, requires diversity of citizenship, and mere residence has never been enough to establish citizenship. *Steigleder v. McQuesten*, 198 U.S. 141, 143, 25 S.Ct. 616, 616–17, 49 L.Ed. 986 (1905); *see generally* 13B Charles A. Wright, et al., *Federal Practice and Procedure* § 3611 (2d ed. 1984). Following oral argument, Naas moved to amend its petition to state that Poulos is a "domicile" of Illinois, as permitted by 28 U.S.C. § 1653 (1988). While the amended peti-

tion is still slightly incorrect—people *are* not domiciles, rather, they *have* domiciles—we accept the point and grant the motion.

The original mistake has a noble pedigree. The drafters of the Fourteenth Amendment made the same error: "All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they *reside*." *See Robertson v. Cease*, 97 U.S. 646, 650, 24 L.Ed. 1057 (1878) (Fourteenth Amendment does not alter rule that citizenship is determined by domicile, not by residence).

court denied the motion, on the ground that RHM had been fraudulently joined. 132 F.R.D. 513, 519 (1990). Later, when Poulos refused to turn over his tax returns in response to a court order, the court dismissed the case with prejudice. Order of Dismissal (Nov. 19, 1990).

Poulos appeals, arguing that the district court should have remanded the case to state court, should not have compelled him to produce his tax returns and should not have dismissed the case with prejudice when he refused. We affirm.

## I. *Jurisdiction*

Broadly speaking, the purpose of federal diversity jurisdiction is to provide a neutral forum for lawsuits between parties from different states. Unsympathetic to the expansion of our jurisdiction, however, and deferential to the prerogatives of state courts, we have traditionally interpreted our diversity jurisdiction narrowly. An example of our strict construction of our jurisdictional statutes is the complete diversity rule of *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). In *Strawbridge*, the Court held that a statute granting federal jurisdiction over civil actions "between a citizen of a state where the suit is brought, and a citizen of another state" (now 28 U.S.C. § 1332) applied only to cases in which no party shared common citizenship with any party on the other side of the dispute. *Id.* 7 U.S. at 267. In the case before us, because Poulos and RHM are both Illinois citizens, there could be no federal diversity jurisdiction until RHM dropped out.[2]

There are two ways for a diversity suit to wind up in federal court. A plaintiff may bring an action to federal court directly, or a defendant may remove a case to federal court from state court within 30 days of its inception. 28 U.S.C. § 1446 (1988). There is another wrinkle, however.

Under some circumstances, a state court dispute that cannot be removed to federal court in its original incarnation may become removable later. In relevant part, 28 U.S.C. § 1446(b) provides:

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of [diversity of citizenship] more than 1 year after commencement of the action.

In this case, Naas filed its notice of removal within 30 days of the entry of summary judgment for RHM, an "order or other paper" from which it ascertained that the parties were now completely diverse and the case was removable.

### A. *The Voluntary/Involuntary Rule*

■ Before 1949, when the language just quoted was added to the removal statute, the Supreme Court held that cases with non-diverse parties did not become removable just because a non-diverse defendant was dismissed from the case. *Whitcomb v. Smithson*, 175 U.S. 635, 638, 20 S.Ct. 248, 250, 44 L.Ed. 303 (1900); *American Car & Foundry Co. v. Kettelhake*, 236 U.S. 311, 316, 35 S.Ct. 355, 356, 59 L.Ed. 594 (1915). Instead, the Court held that such suits were removable only if the plaintiff *voluntarily* dismissed a non-diverse defendant. *Kettelhake*, 236 U.S. at 316, 35 S.Ct. at 356; *see also Self v. General Motors Corp.*, 588 F.2d 655, 657–58 (9th Cir.1978) (discussing history and collecting cases). Poulos argues that this lawsuit should have been remanded to state court because the dismissal of RHM was involuntary. Naas argues that the voluntary/in-

---

**2.** The facts of this case illustrate one of the anomalies of federal diversity jurisdiction. Since none of the parties is from Wisconsin, there is no *prima facie* reason to suspect that a Wisconsin state court would be any more partial than a federal court. But our jurisdictional statutes draw no distinction between suits brought in the plaintiff's home forum and suits brought in a neutral state. Accordingly, for purposes of discussion, we treat this case as if it had been brought in Illinois and assume that the state court would favor Poulos in his suit against Naas.

voluntary rule has been overruled by section 1446(b). This circuit has never addressed the question.

The voluntary/involuntary rule serves two purposes. First, the rule contributes to judicial economy. Removal following an involuntary dismissal may be only temporary: the plaintiff may appeal the dismissal in state court, and success on appeal would lead to the reinstatement of the non-diverse party, destroying federal jurisdiction and compelling remand to the state court. *Quinn v. Aetna Life & Casualty Co.*, 616 F.2d 38, 40 n. 2 (2d Cir.1980). We are anxious to avoid this sort of yo-yo effect. Second, some courts have invoked a general principle of deference to the plaintiff's choice of forum. *See, for example, Self,* 588 F.2d at 659; *Insinga v. La Bella,* 845 F.2d 249, 253 (11th Cir.1988). Allowing removal only when the plaintiff voluntarily dismisses a defendant ensures that the plaintiff will not be forced out of state court without his consent. Of course, this principle of deference is entirely inconsistent with the apparent purpose of the removal statute—to give defendants a means to escape the plaintiff's hometown forum—but it is consistent with our general desire to limit federal jurisdiction. *See, for example, Louisville & N.R. Co. v. Mottley,* 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126 (1908) (announcing the "well-pleaded complaint" rule: plaintiff may avoid federal jurisdiction by presenting only state law claims, even if defense raises federal question); *see also* 28 U.S.C. § 1359 (1988) (prohibiting collusive creation of federal jurisdiction, but not prohibiting collusive destruction of jurisdiction).

Every court of appeals that has addressed the voluntary/involuntary rule has held that it survived the enactment of section 1446(b). *Weems v. Louis Dreyfus Corp.,* 380 F.2d 545, 548 (5th Cir.1967); *Self,* 588 F.2d at 657–60 (assuming that voluntary/involuntary rule applies without discussion of § 1446(b)); *De Bry v. Transamerica Corp.,* 601 F.2d 480, 486–88 (10th Cir.1979); *Quinn,* 616 F.2d at 40 n. 2 (dictum); *In re Iowa Mfg. Co.,* 747 F.2d 462, 464 (8th Cir.1984); *Higgins v. E.I. Du Pont de Nemours & Co.,* 863 F.2d 1162, 1166 (4th Cir.1988) (dictum); *see also* 1A James W. Moore, et al., *Moore's Federal Practice* ¶ 0.168[3.–5–6] at 597 & n. 7 (2d ed. 1991). The district courts in this circuit agree. *Ushman v. Sterling Drug, Inc.,* 681 F.Supp. 1331, 1334–37 (C.D.Ill.1988); *Vidmar Buick Co. v. General Motors Corp.,* 624 F.Supp. 704, 706–07 (N.D.Ill.1985) (dictum). We will not buck the trend, nor will we rehash the legislative history. Suffice it to say that when Congress referred to "a case which is or has become removable," in section 1446(b), Congress apparently intended to incorporate the existing definition of "removable," a definition that included the voluntary/involuntary rule. S.Rep. No. 303, 81st Cong., 1st Sess. (1949), *reprinted in* 1949 U.S.Code Cong.Serv. 1248, 1268 (amendment is "declaratory of the existing rule laid down by the decisions"); *see also Weems,* 380 F.2d at 548; and *Ushman,* 681 F.Supp. at 1336.

In sum, the district court's scholarly analysis of this issue is quite correct. 132 F.R.D. at 519. Absent other considerations, the court should have remanded this case to state court under the voluntary/involuntary rule.[3]

### B. Fraudulent Joinder

As the discussion to this point indicates, the complete diversity rule and the voluntary/involuntary rule make it difficult for an out-of-state (diverse) defendant to remove a case to federal court if an in-state

---

**3.** We note in passing that the precise definition of "voluntary" is in some dispute. The Second Circuit recognizes only the yo-yo rationale for the rule. Accordingly, it treats a dismissal as voluntary if the plaintiff merely accedes to the dismissal by failing to appeal. *Quinn v. Aetna Life & Casualty Co.,* 616 F.2d 38, 40 n. 2 (2d Cir.1980). Other circuits interpret the doctrine in the traditional manner: only dismissals initiated by the plaintiff count as voluntary, even if

the plaintiff can no longer appeal the dismissal. *Self v. General Motors Corp.,* 588 F.2d 655, 658–60 (9th Cir.1978). Our analysis of the voluntary/involuntary rule leads us to express some sympathy for the Second Circuit's interpretation. *See also id.* at 660–65 (Ely, J., dissenting) (recommending functional analysis of doctrine). Nonetheless, the parties have neither briefed nor argued this issue, and we need not reach it here.

(non-diverse) defendant has ever been party to the lawsuit. But there is one more route to removal. If Naas can show that the joinder of RHM was fraudulent, then removal will be allowed. *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97, 42 S.Ct. 35, 37, 66 L.Ed. 144 (1921).

This court has never before addressed fraudulent joinder, and the parties dispute the meaning and application of the doctrine. Poulos argues that he presented his claim against RHM in good faith and that "a parent corporation of a wholly owned subsidiary may be liable to answer for a subsidiary depending upon the factual circumstances." Poulos Br. at 3–4. Naas questions Poulos' intentions but argues that they are irrelevant. It is enough, Naas argues, that Poulos failed to state a viable claim against RHM.

When speaking of jurisdiction, "fraudulent" is a term of art. 14A Charles A. Wright, et al., *Federal Practice and Procedure* § 3723 at 354 (2d ed. 1985). Although false allegations of jurisdictional fact may make joinder fraudulent, *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir.1981), in most cases fraudulent joinder involves a claim against an in-state defendant that simply has no chance of success, whatever the plaintiff's motives. *Chicago, R.I. & P.R. Co. v. Whiteaker*, 239 U.S. 421, 424, 36 S.Ct. 152, 153, 60 L.Ed. 360 (1915); *Insinga*, 845 F.2d at 254; *Dodd v. Fawcett Publications, Inc.*, 329 F.2d 82, 85 (10th Cir.1964); *Chilton Private Bank v. Norsec–Cook, Inc.*, 99 B.R. 402, 403 (N.D.Ill.1989); *Kocot v. Alliance Machine Co.*, 651 F.Supp. 226, 227 (S.D.Ill.1986). This definition of "fraudulent" accords

with the purpose of the doctrine. No matter what the plaintiff's intentions are, an out-of-state defendant may need access to federal court when the plaintiff's suit presents a local court with a clear opportunity to express its presumed bias—when the insubstantiality of the claim against the in-state defendant makes it easy to give judgment for the in-state plaintiff against the out-of-state defendant while sparing the in-state defendant.

■ An out-of-state defendant who wants to remove must bear a heavy burden to establish fraudulent joinder. The defendant must show that, after resolving all issues of fact *and law* in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant. *B., Inc.*, 663 F.2d at 549. At the point of decision, the federal court must engage in an act of prediction: is there any reasonable possibility that a state court would rule against the non-diverse defendant? If a state court has come to judgment, is there any reasonable possibility that the judgment will be reversed on appeal? [4]

■ Turning now to the merits, we agree with the district court that Poulos failed to state any claim against RHM. Under Wisconsin law, a parent corporation may be liable for its subsidiary's delicts if " 'applying the corporate fiction would accomplish some fraudulent purpose, operate as a constructive fraud, or defeat some strong equitable claim.' " *Consumer's Co-op v. Olsen*, 142 Wis.2d 465, 475, 419 N.W.2d 211, 214 (1988) (quoting *Milwaukee Toy Co. v. Industrial Comm'n*, 203 Wis.

4. If a state trial court dismisses a defendant (or grants summary judgment, as did the Wisconsin court in the case before us), it does not resolve issues of *law* in either party's favor. Thus a federal court considering fraudulent joinder in a case where the state court has come to judgment is not bound by the state court's decision. *Cf.* 28 U.S.C. § 1738 (federal courts must defer to state court judgments as other state courts would). If federal courts were bound in such situations, fraudulent joinder would swallow up the voluntary/involuntary rule. *But see Insinga v. La Bella*, 845 F.2d 249, 254 (11th Cir.1988) (citing state court dismissal of resident defendant as reason to find fraudulent joinder).

We note in passing that this potential problem with res judicata can be avoided by careful compliance with the time limits in section 1446(b). In this case, Naas could have discerned that the joinder of RHM was fraudulent when Poulos served his complaint. It should have removed within 30 days following service of the complaint, not within 30 days following the entry of summary judgment. But Poulos did not notice the error, and the 30–day limit in section 1446(b) can be waived. *Northern Illinois Gas Co. v. Airco Industrial Gases, Div. of Airco, Inc.*, 676 F.2d 270, 273 (7th Cir.1982); 1A James W. Moore, et al., *Moore's Federal Practice* ¶ 0.168[3.–5–7] (1991).

493, 496, 234 N.W. 748 (1931)). Although Poulos alleged that RHM controlled Naas, he alleged no impropriety or disregard of Naas' corporate form. *Id.* 142 Wis.2d at 488, 419 N.W.2d at 219 (disregard of corporate formalities must be egregious or control pervasive). Perhaps more importantly, there is simply no indication that RHM's presence in the suit was required to avoid any possible fraud: Poulos did not allege (nor, truthfully, could he allege) that the assets of Naas would be insufficient to satisfy a judgment on his claims. *Id.* at 484–85, 419 N.W.2d at 218.

Poulos argues that some facts might turn up to support a claim against RHM. He reminds us that the Wisconsin judge gave him leave to reinstate RHM should such facts turn up. Naas disputes Poulos' characterization of the court's action, arguing that the judge merely indicated his potential willingness to reconsider, but the characterization doesn't matter. Although Naas bears a heavy burden to establish fraudulent joinder, it need not negate any possible theory that Poulos might allege in the future: only his present allegations count. *Dodd,* 329 F.2d at 85. If Poulos' theory were right, he could defeat diversity jurisdiction by joining his grandmother as a defendant—surely *some* set of facts might make her liable.

Based on the allegations in his complaint, Poulos had no chance of recovering damages from RHM in a Wisconsin court. Moreover, at no point in the state or federal proceedings did Poulos attempt to fill the gaps in his complaint. Thus we may conclude that the joinder of RHM was fraudulent without deciding whether Poulos could have cured the problem with his complaint by amending it while in federal court. *See Kruso v. International Tel. & Tel. Corp.,* 872 F.2d 1416, 1426 n. 12 (9th Cir.1989) (refusing to consider unfiled amended complaint for purposes of jurisdictional inquiry), *cert. denied,* —— U.S. ——, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990). The finding of fraudulent joinder was correct, and jurisdiction was proper.

## II. *Production of Tax Returns*

■ At various points in the proceedings, Naas asked Poulos to document his income. Naas made the request so that it could determine whether a "community of interest" existed between Poulos and Naas so as to make Poulos a dealer under the WFDL. *See* Wis.Stat. § 135.02 (1989–90); *Ziegler Co. v. Rexnord, Inc.,* 139 Wis.2d 593, 605–06, 407 N.W.2d 873 (1987). Further, Poulos' income was relevant to the amount of his damages after Naas terminated him. In response to repeated requests, Poulos provided his Schedule C income tax reports for the years 1987, 1988 and 1989. He also provided an affidavit supplying income tax information for the same years. In both the state and the federal proceedings, Poulos' attorney repeatedly assured Naas that he would eventually provide Poulos' tax returns, but he never did. Finally, Poulos announced that he simply would not produce his tax returns, on Fifth Amendment grounds.

Poulos argued that his tax returns were presumptively privileged and thus shielded from discovery. The district court disagreed, deciding that whether or not the tax returns bore some "qualified immunity," Naas had overcome any possible presumption against disclosure. Of course, Poulos had probably already waived any objection to production by failing to object when disclosure was due. Fed.R.Civ.P. 34(b) ("The party upon whom the request is served shall serve a written response within 30 days...."); *Krewson v. Quincy,* 120 F.R.D. 6, 7 (D.Mass.1988). But the district court did not reach the issue of waiver, and as we do not need to, we will avoid it as well.

Tax returns in the hands of a taxpayer are not privileged. *St. Regis Paper Co. v. United States,* 368 U.S. 208, 219, 82 S.Ct. 289, 296, 7 L.Ed.2d 240 (1961) (dictum); *June v. George C. Peterson Co.,* 155 F.2d 963, 967 (7th Cir.1946). Nonetheless, a variety of courts, including district courts in this circuit, have also opined that "a public policy against unnecessary public disclosure arises from the need, if the tax laws are to function properly, to encourage tax-

payers to file complete and accurate returns." *Premium Service Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir.1975); *see also SEC v. Cymaticolor Corp.*, 106 F.R.D. 545, 547 (S.D.N.Y.1985); *Shaver v. Yacht Outward Bound*, 71 F.R.D. 561, 563 (N.D.Ill.1976); *Federal Sav. & Loan Ins. Corp. v. Krueger*, 55 F.R.D. 512, 514 (N.D.Ill.1972).

We express no opinion at this time on the validity or proper formulation of this policy against disclosure. But under any formulation of this "qualified immunity," Poulos was properly compelled to produce his tax returns. First, Poulos himself put the level and sources of his income at issue both by claiming to be a dealer under the WFDL and by claiming damages following the termination of his contract with Naas. *Krueger*, 55 F.R.D. at 514 (production of tax returns may be compelled where litigant puts the amount of his income into issue). Second, there was no reasonable alternative source for the information requested. *Cf. Eastern Auto Distributors, Inc. v. Peugeot Motors of America, Inc.*, 96 F.R.D. 147, 149 (E.D.Va.1982) (plaintiff could disentangle defendant's corporate structure by reference to public records). Poulos' offer to provide the information about his income by way of affidavit does not count as an alternative source—Naas wanted Poulos' tax returns because it needed to *dispute* Poulos' personal accounting. *Shaver*, 71 F.R.D. at 564 ("It is not enough that he examine the contents of the returns and swear by affidavit to what they contain."). Finally, if we were to recognize some sort of presumption against disclosure, we would certainly leave enforcement of the policy to the discretion of the trial court, *Powers v. Chicago Transit Authority*, 890 F.2d 1355, 1359 (7th Cir.1989) (decision to compel production of potentially privileged material is committed to discretion of trial court), and there was no abuse of discretion here.

### III. *Dismissal*

■ Rule 37(b)(2)(C) of the Federal Rules of Civil Procedure authorizes district courts to dismiss cases or to enter default judgments against parties who refuse to comply with discovery orders. This drastic sanction requires a showing of "willfulness, bad faith, or fault" on the part of the disobedient party, but the imposition of the sanction is otherwise within the discretion of the court. *Sere v. Board of Trustees*, 852 F.2d 285, 289 (7th Cir.1988) (internal quotation omitted); *see also United States v. Di Mucci*, 879 F.2d 1488, 1494 (7th Cir.1989). We have recommended that courts consider lesser sanctions before imposing default judgments, *Palmer v. Decatur*, 814 F.2d 426, 429 (7th Cir.1987), but we see few other practicable sanctions in this case. The judge could have decided to take the withheld information as favoring Naas' position, but then Poulos would have no cause of action under the WFDL (because he would not be a "dealer") nor any damages (because he successfully applied his talents elsewhere). Further proceedings would have been pointless.

The district court gave Poulos several warnings about the probable consequences of his refusal to turn over his tax returns. Transcript of Proceedings at 2–3 (Nov. 14, 1990). Further, the court offered to enter a protective order to safeguard Poulos' interests in privacy. *Id.* at 11. When Poulos still refused to produce his returns, it was well within the court's discretion to dismiss Poulos' case for his willful defiance.

AFFIRMED.