Robert E. WEEKLY, Jr. and
Mary Weekly

v.

**OLIN CORPORATION, a foreign corporation authorized to do business in the state of West Virginia, Allied Corporation, a foreign corporation authorized to do business in the state of West Virginia and Robert Higgins, a West Virginia resident.**

Civ. No. 85–0123–W(K).

United States District Court,
N.D. West Virginia.

Dec. 4, 1987.

Jennifer L. Sargus, Arthur M. Recht, and Robert Yahn, Wheeling, W.Va., for plaintiffs.

J.S. Francis and Sandra M. Chapman, New Martinsville, W.Va., for defendants Olin Corp. and Robert Higgins.

Allyn Carnam, New Haven, Conn., for defendant Olin Corp.

Cynthia A. Nelson, Charleston, W.Va., for defendant Allied Corp.

FRANK A. KAUFMAN, Senior District Judge: *

Plaintiff has moved to remand this case to the West Virginia state court from which it was removed by defendants over two years ago. For the reasons stated below, plaintiff's remand motion will be granted.

## I.

■ Plaintiff, Robert E. Weekly, Jr., is a citizen of the state of West Virginia. Defendant Olin Corporation is incorporated in the Commonwealth of Virginia with its principal place of business in Stamford, Connecticut. Defendant Allied Corporation is incorporated in the state of New York with its principal place of business in the state of New Jersey. Defendant Robert Higgins is a citizen of the state of West Virginia.[1]

On September 17, 1985, plaintiff filed a complaint against the three defendants in the Circuit Court of Marshall County, West Virginia. Essentially, plaintiff alleges that while employed by defendant corporations,[2] he was exposed to the fumes of the chemical toluene diisocyanate (TDI), a product manufactured by the corporate defendants at their Moundsville, West Virginia facility at which plaintiff worked. Plaintiff alleges that the conduct of defendant corporations as well as of defendant Higgins [3] in permitting plaintiff to be exposed to TDI was "deliberate" within the meaning of West Virginia workers' compensation law and that, accordingly, such conduct destroyed any immunity to which defendants were entitled by virtue of that law. Plaintiff claims that as the result of such exposure

---

* Frank A. Kaufman, Senior Judge of the United States District Court for the District of Maryland, sitting by designation.

1. The record indicates that plaintiff Mary Weekly may not have been named as a plaintiff at the time this case was removed to this Court. However, it is assumed, for purposes of this opinion, that Mary Weekly is, like her husband, a citizen of the state of West Virginia.

   The citizenship of the respective parties is not well pleaded. With respect to the two corporate defendants, the complaint states only their state of incorporation, and not their principal place of business as required by 28 U.S.C. § 1332(c). The fact that defendants are licensed to do business in West Virginia is irrelevant for purposes

of determining subject matter jurisdiction. Furthermore, neither the complaint nor the petition for removal indicates that defendant Higgins is a *citizen* of West Virginia. Both pleadings instead refer to Higgins as a *resident* of that state. From the entire record, however, the facts concerning citizenship of the parties are clear.

2. Allied Corporation was the predecessor of Olin Corporation. Plaintiff was apparently employed by one of the two corporate defendants or the other for a total period of approximately 29 years.

3. The record indicates that Higgins was plaintiff's supervisor during at least some of the time period relevant to this action.

he has developed a respiratory disease and incurred certain medical expenses, loss of wages, and related compensatory damages totalling $1,000,000. Plaintiff also seeks the award of punitive damages in that same amount.

On October 7, 1985, defendant Robert Higgins filed in the Circuit Court of Marshall County an answer to the complaint as well as a motion to dismiss. On October 16, 1985, each and all of the three defendants filed in federal court a petition to remove the action against them to this federal district court. As grounds for removal, defendants asserted that the action "wholly involves citizens of different states." Petition for Removal, ¶ 6. With respect to the presence of West Virginia citizen Higgins, defendants asserted that there was "no basis in fact or law" for a claim against him. *Id.* On that same day, defendant Olin Corporation filed in this Court an answer and a motion to dismiss, and on October 21, 1985, defendant Allied Corporation filed in this Court an answer to plaintiff's complaint.

On November 19, 1985, this Court denied the motions to dismiss of defendant Higgins and of defendant Olin Corporation, stating: "The Court has examined the entire record in this action and is of the opinion that these matters can better be resolved following further development of the factual issues in this civil action."

■ After the Court entered its Order, the parties proceeded with discovery. On June 9, 1987, plaintiff moved to remand the case to state court for lack of diversity.[4] Defendants, opposing that motion, assert that subsequent developments in the case during discovery conclusively demonstrate that plaintiff has no claim against defendant Higgins, and that the granting of his motion to dismiss by this Court is a "mere technicality" and that, therefore, his presence in this case does not destroy diversity.[5]

## II.

■ A federal district court has the duty continually to reexamine the basis for its jurisdiction over a case after that case has been removed from state court. 28 U.S.C. § 1447(c) provides in relevant part:

If at *any* time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court *shall* remand the case, and may order the payment of just costs.

(emphasis added).[6]

■ In order for the instant case to have been properly removed, diversity of citizenship must have existed both at the time plaintiff filed the action in state court, and at the time defendants removed it. *See* C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3723, at 312 (2d ed. 1985), and cases cited thereat. The propriety of removal must usually be determined by examining the record as it stood at the time the defendants filed their petition for removal on October 16, 1985. *See id.* § 3721, at 209. Thus, "[d]evelopments in the lawsuit or attempted amendments to the pleadings subsequent to removal can not [sic] serve to confer federal court jurisdiction if none in fact existed as of the time of removal." *Wamp v. Chattanooga Housing Authority*, 384 F.Supp. 251, 253 (E.D.Tenn.1974), *aff'd on other grounds,*

---

4. Apparently, it was not until June 9, 1987 that plaintiff raised the questions of remand and improper removal. A federal court is not required to pass on the propriety of every removal petition filed. 14A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3730, at 500 (2d ed. 1985). When a plaintiff does move to remand, however, the burden is on the court to "evaluate the substantive underpinnings of plaintiff's claim—and hence the propriety of removal" by examining the record as it stands at the time defendants filed their petition for removal. 14A C. Wright, A. Miller & E. Cooper, *supra,* § 3721, at 209.

5. See the discussion *infra* in Part IV.

6. It is therefore not fatal to plaintiff's remand motion of June 9, 1987 that plaintiff did not move to remand earlier either at the time of this Court's prior determination that removal was proper or at any other time. *Cf.* C. Wright, A. Miller & E. Cooper, *supra,* § 3740, at 596–99 (if motion to remand is denied, propriety of removal is reviewable on appeal from *final* judgment).

527 F.2d 595 (6th Cir.1975), *cert. denied,* 425 U.S. 992, 96 S.Ct. 2203, 48 L.Ed.2d 816 (1976).

In the case at bar, plaintiff and defendant Higgins are both citizens of West Virginia. However, defendants seemingly argue that plaintiff has no real claim against defendant Higgins, and that if Higgins is dismissed from the case diversity jurisdiction exists. Although it is not entirely clear from the petition for removal, it appears that defendants contend in substance that plaintiff has fraudulently joined Higgins merely in order to defeat removal. However, defendants' allegations of fraud are hardly as explicit as they should be if defendants desire to charge plaintiff with the fraudulent joinder of Higgins. *See* 14A C. Wright, A. Miller & E. Cooper, *supra,* § 3723, at 342–43. The petition for removal asserts in conclusory fashion that there is "no basis in fact or law for Petitioner Robert Higgins ... being named as a defendant, there being no statutory or common law basis for a *Mandolidis* claim against a co-employee, *Mandolidis* being confined to employers." Petition, ¶ 6, referring to *Mandolidis v. Elkins Industries, Inc.,* 161 W.Va. 695, 246 S.E.2d 907 (1978). In its memorandum of law in opposition to plaintiff's motion to remand, defendant Allied Corporation alludes to plaintiff's attempt to "avoid removal," and characterizes the motion to remand as an "eleventh-hour desperate attempt to delay facing resolution of this action on its merits." Memorandum at 11. Other than engaging in such rhetorical embellishments, defendants do not specifically allege fraud on the part of the plaintiff. Nevertheless, despite defendants' lack of specificity, this Court will evaluate plaintiff's claim against Higgins under the standards relating to fraudulent joinder.

### III.

In *Nobers v. Crucible, Inc.,* 602 F.Supp. 703 (W.D.Pa.1985), Judge Ziegler summarized the fraudulent joinder doctrine as follows:

The "fraudulent joinder" of a non-diverse defendant cannot defeat the right of removal.... "Fraudulent joinder" is established when the claim alleged against the non-diverse defendant could not possibly impose liability under the applicable state law and the facts alleged.... Stated differently, the cause of action cannot be "colorable," ... assert an "arguably reasonable basis" for imposing liability, ... or "conceivably" allow recovery.... In this context, "fraudulent" is a term of art and not intended to impugn the integrity of a plaintiff or counsel.... Therefore, the intent or motive of a plaintiff in joining a non-diverse defendant is immaterial.... Our determination of whether [the defendant] has been fraudulently joined must be made on the basis of the record at the time the petition for removal was presented....

602 F.Supp. at 706 (citations omitted); *see also* 14A C. Wright, A. Miller & E. Cooper, *supra,* § 3723, at 342–56.

At the time defendants filed their petition for removal, the record consisted of plaintiff's complaint and defendants Higgins' and Olin Corporation's answers and motions to dismiss. It is in the light of that then existing record that this Court must determine whether the allegations in plaintiff's complaint, if taken as true, arguably state a claim under applicable West Virginia state law. *See, e.g., Tedder v. F.M.C. Corp.,* 590 F.2d 115, 116–17 (5th Cir.1979) (per curiam); *Miami Pipe Line Co. v. Panhandle Eastern Pipe Line Co.,* 384 F.2d 21, 27 (10th Cir.1967).

Turning to the complaint, the first problem this Court must face is which version of the West Virginia workers' compensation law to apply. Under relevant West Virginia law, employers and co-workers are immune from suit by a plaintiff employee as long as, *inter alia,* they do not inflict an injury upon the plaintiff with "deliberate intention."[7] *See* W.Va.Code §§ 23-2-6a, 23-4-2(b), 23-4-2(c)(2) (1985). Prior to May 7, 1983, a plaintiff could prove "deliberate intention" by demonstrating that the de-

---

7. To enjoy the statutory grant of immunity, the co-worker also has to be acting "in furtherance of the employer's business." W.Va.Code § 23-2-6a.

fendant's misconduct was of an "intentional or willful [sic], wanton and reckless character, that the employer must have knowledge and appreciation of the high degree of risk of physical harm to another created by such misconduct, and, of course, that the employer's action must be the proximate cause of the injury." *Cline v. Joy Mfg. Co.*, —— W.Va. ——, 310 S.E.2d 835, 838 (W.Va.1983); *see also Mandolidis*, 246 S.E. 2d at 914.

In February 1983, however, the West Virginia state legislature amended the workers' compensation law to provide for a much stricter standard of proof for the "deliberate intention" requirement than that which the Supreme Court of Appeals of West Virginia had set forth in *Mandolidis, supra. See* W.Va.Code § 23–4–2(c)(1) (1985);[8] *see also Handley v. Union Carbide Corp.*, 620 F.Supp. 428, 433–35 (S.D. W.Va.1985), *aff'd*, 804 F.2d 265 (4th Cir. 1986) (discussing amended statute). That stricter statutory standard of proof applies to all causes of action accruing on or after May 7, 1983, the effective date of the amended legislation. *See* 1983 W.Va.Acts 1039. Claims arising or accruing prior to May 7, 1983, however, are unaffected by the new law, *see* W.Va.Code § 23–4–2(d), and are thus presumably governed by the *Mandolidis* standard of proof.

■ In the case at bar, the alleged exposure to TDI occurred both before and after the effective date of the amended legislation. Plaintiff contends that the exposure occurred throughout plaintiff's 29 years of employment with defendants, ending only when plaintiff ceased to work for defendants on or about January 6, 1985.

Aware of the different standards of proof, plaintiff has attempted in his complaint to allege facts sufficient to meet both the *Mandolidis* standard and the stricter standard set forth in W.Va.Code sections 23–4–2(c)(2)(i)–(ii). If plaintiff meets the stricter statutory standard, he also has stated, *a fortiori*, a claim under the *Mandolidis* standard. Because this court finds that plaintiff has arguably stated a claim under the stricter statutory standard, this Court does not reach the question of whether plaintiff can maintain part of his cause of action under the earlier standard and the rest of this cause under the subsequent statutory standard, or whether the repeated exposure to TDI constitutes one claim to be adjudicated under one of the two standards.

Under W.Va.Code section 23–4–2(c)(2), as amended in 1983, employers and/or co-workers lose the immunity from suit conferred on them by the workers' compensation law "only if the employer or person against whom liability is asserted acted with 'deliberate intention.'" W.Va.Code § 23–4–2(c)(2). A plaintiff may satisfy the requirement of "deliberate intention" in one of two ways.

First, pursuant to W.Va.Code section 23–4–2(c)(2)(i), plaintiff can prove that "such employer or person against whom liability is asserted acted with a consciously, subjectively and deliberately formed intention to produce the specific result of injury or death to an employee. That standard requires a showing of an actual, specific intent and may not be satisfied by allegation or proof of (A) conduct which produces a result that was not specifically intended; (B) conduct which constitutes negligence, no matter how gross or aggravated; or (C) willful, wanton or reckless misconduct. ..."

Paragraph 9 of plaintiff's complaint tracks that statutory language.[9] While the

---

**8.** "It is declared ... that the intent of the legislature in providing immunity from common law suit was and is to protect those so immunized from litigation outside the workmen's [workers'] compensation system except as herein expressly provided; that, in enacting the immunity provisions of this chapter, the legislature intended to create a legislative standard for loss of that immunity of more narrow application and containing more specific mandatory elements than the common law tort system concept and standard of willful, wanton and reckless misconduct...." W.Va.Code § 23–4–2(c)(1) (1985) (brackets in original).

**9.** "... Olin Corporation and Robert Higgins acted with a consciously, subjectively and deliberately formed intention to produce the specific result of injury from which plaintiff, Robert Weekly suffers, and that said defendants acted with an actual, specific intent resulting in the

allegations in paragraph 8 of the complaint, in light of discovery completed to date in this case, may or may not amount to a "consciously, subjectively and deliberately formed intention,"[10] plaintiff's complaint, in its totality, meets the standards of section 23–4–2(c)(2)(i) sufficiently to withstand an allegation of fraudulent joinder on the record as it existed at the time defendants removed this case.

A plaintiff may also meet the "deliberate intention" requirement of section 23–4–2(c)(2) by proving the existence of five specific facts set forth in sections 23–4–2(c)(2)(ii)(A)–(E):

(A) That a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;

(B) That the employer had a subjective realization and an appreciation of the existence of such specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by such specific unsafe working condition;

(C) That such specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of such employer, which statute, rule, regulation or standard was specifically applicable to the particular work and working condition involved, as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions;

(D) That notwithstanding the existence of the facts set forth in subparagraphs (A) through (C) hereof, such employer nevertheless thereafter exposed an employee to such specific unsafe working condition intentionally; and

(E) That such employee so exposed suffered serious injury or death as a direct and proximate result of such specific unsafe working condition.

In paragraph 8 of his complaint, set forth in the margin,[11] plaintiff avers facts which, if proven, would seem to meet the burden imposed by those five statutory elements.

Defendants argue that as a matter of West Virginia law, it is impossible for the second alternative method of proof—the five aforementioned statutory elements—to apply to plaintiff's claim against Robert Higgins because Higgins is an individual co-worker rather than an employer. In support of that argument, defendants rely on the text of subsections (A) and (B) of section 23–4–2(c)(2)(ii). While subsection 23–4–2(c)(2)(i) applies to "such employer *or person* " and outlines the subjective intention either of them must form to incur

---

specific injury from which plaintiff suffers." Compl., ¶ 9.

**10.** Paragraph 8 of the complaint reads:

(8) That at all times prior to May 7, 1983 and thereafter Olin Corporation, or its predecessor, Allied Corp., and defendant, Robert Higgins, willfully, wantonly, recklessly, unlawfully and deliberately, with knowledge of, and appreciation of, the strong possibility that employees in general, and in particular the plaintiff, Robert Weekly, would suffer harm or death, from the hazards associated with exposures to the product "TDI," violated, disregarded, circumvented and by-passed state and federal safety statutes; failed to provide the employees in general and the plaintiff, Robert Weekly, in particular, a safe place to work; failed to inspect and/or maintain their property and equipment in a proper and reasonably skillful manner; failed to inform, warn or require proper information or warnings to be given to the employees in general and the plaintiff, Robert Weekly, in particular, regarding hazards and dangers known to defendants that existed in the work place; failed to provide, institute and observe adequate, proper and accepted safety precautions; failed to provide, institute and observe reasonable safety rules and standards accepted and acceptable within the industry; failed to make safe or inspect equipment on the defendants' Moundsville facility and otherwise acted in a willful, wanton, reckless, unlawful and deliberate manner with knowledge and appreciation of a strong possibility that harm or death would result from such conduct; that, further, all such willful, wanton, reckless, unlawful and deliberate misconduct by the said defendants constituted, established and demonstrated a deliberate intention on the part of the said defendants to harm the employees in general and plaintiff, Robert Weekly, in particular.

**11.** *See supra* at note 11.

liability, subsection 23–4–2(c)(2)(ii) uses only the word "employer," and at no place couples the word "employer" with the word "person". *See* §§ 23–4–2(c)(2)(ii)(B)–(D), *supra.* Based on that distinction, defendants argue that the legislature did not intend subsection 23–4–2(c)(2)(ii) to apply to the type of claim which plaintiff is stating in this case against defendant Higgins. Defendants' interpretation is supported by other statutory language which refers to "employers" and "employees" but not to persons. *See* W.Va.Code § 23–4–2(c)(1).

While defendants' construction of the statute is far from frivolous, plaintiff's counter-interpretation is more plausible. Plaintiff relies on the fact that the introductory language of section 23–4–2(c)(2), which governs the application of all parts of section 23–4–2 and thus of *both* subsections 23–4–2(c)(2)(i) and 23–4–2(c)(2)(ii), speaks of "the employer *or person* " (emphasis added).[12] After so noting, plaintiff argues that the two subsections merely represent two alternative methods of proving liability against either one or both of the employer and co-worker. Plaintiff's interpretation is consistent with West Virginia cases which hold that the scope of immunity afforded fellow employees under W.Va.Code section 23–2–6a (a section expressly cited in the amended legislation, *see* § 23–4–2(c)(2)), was intended by the legislature to be identical to that enjoyed by the employer. *E.g., Bennett v. Buckner,* 150 W.Va. 648, 149 S.E.2d 201, 205 (1966). The scope of immunity would cease to be identical if a co-worker, *i.e.,* a "person" who is not an "employer," enjoyed greater statutory protection with respect to the burden of proof than did his employer.

In the absence of any relevant West Virginia caselaw on point, this Court concludes that section 23–4–2(c)(2)(ii) applies to co-employees,[13] and that plaintiff has stated a claim under that subsection sufficient to withstand defendants' allegations that Higgins was fraudulently joined to prevent removal. *Compare Fields, Inc. v. Hunt–Wesson Foods, Inc.,* 397 F.Supp. 707, 708 (W.D.Okla.1975) (normal reading of complaint in area where law was well-settled did not indicate that any plausible claim was alleged against the non-diverse party and, therefore, plaintiff was not entitled to a remand to the state court).

### IV.

Defendants place great stress upon developments in discovery since November 19, 1985 when this Court denied the motions to dismiss of defendant Higgins and of defendant Olin Corporation. These developments include, *inter alia,* plaintiff's failure to answer in timely fashion defendant's request for admissions. Defendants argue that because of plaintiff's said failure, the facts which the requests for admission concern must be taken as established pursuant to Fed.R.Civ.P. 36(a) and that once those facts are established, it will be clear that defendant Higgins is not a viable defendant in this case. This Court has discretion as to whether to treat plaintiff's failure to admit as establishing the facts involved or whether instead to allow plaintiff to file late answers. *See* Fed.R.Civ.P. 36(b).

The discovery record to date reveals the following: On February 27, 1987, defendants requested plaintiff to make the following admissions, *inter alia:*

> that a *Mandolidis*-type action can *never* apply to a co-employee. At this time this Court is required to interpret West Virginia law in order to rule upon plaintiff's pending remand motion. If after the remand ordered pursuant to this opinion the state court to which this case is remanded should disagree with this Court's interpretation of West Virginia law, that will not undermine the validity of this Court's remand determination. *See* C. Wright, A. Miller & E. Cooper, *supra,* § 3723, at 353–54.

**12.** "The immunity from suit provided under this section and under section six-a [§ 23–2–6a], article two of this chapter, may be lost only if the *employer or person* against whom liability is asserted acted with 'deliberate intention.'" W.Va.Code § 23–4–2(c)(2) (1985) (emphasis added) (brackets in original).

**13.** It appears from the caselaw that co-workers are rarely named as party defendants in *Mandolidis*-type actions. Nevertheless, neither the parties nor this Court has found a case which states

2(t) You can identify no specific act on the part of Robert Higgins evidencing his intent to harm you.

2(u) You can identify no specific omission on the part of Robert Higgins evidencing his intent to harm you.

Plaintiff finally filed untimely answers to those requests for admissions on June 26, 1987. The answers to the requests read as follows:

[2(t)]: *RESPONSE.* In regard to the unsafe work conditions in which plaintiff worked as a result of Robert Higgins['] safety policies, see deposition of plaintiff and affidavit of plaintiff in plaintiff's "Motion to Remand."

[2(u)]: *RESPONSE.* Denies. Plaintiff directs your attention to the deposition of plaintiff and his affidavit in conjunction with his motion to remand concerning the numerous omissions on the part of Robert Higgins.

Plaintiff's affidavit as well as the deposition of Robert Higgins, to which plaintiff cites in his memorandum in support of his motion to remand, demonstrate that plaintiff has established enough facts to put into issue the factual questions which are the subject of the aforementioned requests for admissions, at least with respect to a cause of action under W.Va.Code section 23–4–2(c)(2)(ii). While plaintiff's answers to the requests for admissions may not suggest that defendant Higgins acted "with a consciously, subjectively and deliberately formed intention to produce the specific result of injury or death to an employee" as required by W.Va.Code section 23–4–2(c)(2)(i), the record discloses that, at the very least, there exist factual disputes concerning whether the five special factors of section 23–4–2(c)(2)(ii) do exist with respect to defendant Higgins. Giving to plaintiff all inferences favorable to him, the record indicates that plaintiff may be able to prove that defendant Higgins was plaintiff's supervisor; that Higgins participated in a company study which demonstrated that TDI was harmful; that plaintiff himself had been harmed by exposure to TDI; that plaintiff himself was never told of the existence or contents of the study; that Higgins knew that allowing plaintiff to be exposed to TDI violated relevant federal safety standards; that from processing plaintiff's workers' compensation claims Higgins himself knew that plaintiff was already being harmed by TDI exposure; that Higgins also knew that the available respiratory safety equipment was inadequate to protect persons such as plaintiff who were already "sensitized" to TDI; that Higgins still failed either to relieve plaintiff from work duties which exposed him to TDI or to warn him that such exposure was harmful; and that it was the policy of both Higgins and defendant corporations to instruct plaintiff and other workers that the presence of hazardous levels of TDI could be detected simply by "getting a whiff of it."

■ In light of this Court's determination that as a matter of West Virginia law plaintiff is entitled to sue defendant Higgins under section 23–4–2(c)(2)(ii), plaintiff's answers to defendants' requests for admissions arguably support plaintiff's claim under that part of the statute. Defendants have failed to demonstrate any prejudice to them from the untimeliness of plaintiff's answers. Therefore, they are not entitled as a matter of right to have plaintiff's failure to answer in timely fashion taken as admissions. Nor, in the context of this case, will this Court exercise its discretion so to treat that failure. But even if the plaintiff's late answers to the requests for admissions are not accepted and are not considered by this Court, plaintiff still has come forth with sufficient allegations and proffers to require this Court to hold that plaintiff has arguably stated a claim against defendant Higgins on the date plaintiff filed his complaint in state court and on the date defendants removed this case to this Court.

## V.

■ For the reasons set forth in this opinion this Court holds that as of the date the case was removed, plaintiff's claim against defendant Higgins arguably states allegations which are not fraudulent as a matter of law. Therefore, Higgins must be

deemed a validly named defendant and his presence as a party defendant destroys diversity jurisdiction and did destroy it on September 17, 1985 when this case was filed in state court, and on October 16, 1985 when this case was removed to this Court. Accordingly, this Court will remand this case to the Circuit Court of Marshall County, West Virginia, pursuant to 28 U.S.C. § 1447(c).[14]

---

**14.** Defendants argue that it is a waste of judicial resources to remand the case because, should the state court later dismiss Higgins, defendants will only remove the case again. Defendants' reliance on 28 U.S.C. § 1446(b) for that principle is misplaced. Should the West Virginia state court later dismiss Higgins without agreement of plaintiff, the remaining defendants may not then remove the case to federal court. That is at least the view of the majority of federal courts which have spoken to that issue and is the view this court adopts in this case. 14A C. Wright, A. Miller & E. Cooper, *supra,* § 3723 at 315–18; *see also Atlanta Shipping Corp. v. International Modular Housing, Inc.,* 547 F.Supp. 1356, 1360 (S.D.N.Y.1982).