Theresa **MONTGOMERY** and
**Mattie Marten Plaintiffs**

v.

**FIRST FAMILY FINANCIAL SERVICES, INC.,** Associates Corporation of North America; Associates First Capital Corporation; Citigroup, Inc.; Citifinancial Credit Corporation; American Security Insurance Company; Union Security Life Insurance Company; Sherry Rhodes; Karen Wilburn, et al. Defendants

No. CIV.A. 4:01CV293LN.

United States District Court,
S.D. Mississippi,
Eastern Division.

July 23, 2002.

**602**

John W. Boling, Meridian, MS, Kimberly P. Turner, Hollis & Wright, PC, Birmingham, AL, for Plaintiffs.

Robert H. Walker, Fred Krutz, III, Bonnie Bridges Smith, Forman, Perry, Watkins, Krutz & Tardy, Jackson, MS, Charles E. Griffin, Griffin & Associates, Jackson, MS, Randy L. Dean, Walter D. Willson, Wells, Marble & Hurst, Jackson, MS, for Defendants.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on plaintiffs' motion to remand and their separate motion to amend and remand. Defendants have responded in opposition to the motions and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that plaintiffs' motions are due to be denied.[1]

Sometime in 1999 or 2000, Mattie Marten saw a "write-up" in the Bay Springs Impact which said that attorney John Boling was handling litigation against First Family Financial Services, Inc. Ms. Marten was familiar with attorney Boling, as he had previously filed a suit for her in June 1998 against Foremost Insurance Company relating to some allegedly overpriced insurance she had been sold in connection with a loan from Total Finance Company in Meridian. When Ms. Marten saw this ad, she contacted her daughter, Theresa Montgomery, since she knew that Theresa had gotten some loans from First Family; in fact, Ms. Marten had cosigned for two such loans. After talking to her daughter, Ms. Marten contacted John Boling following which attorney Boling, on August 29, 2001, filed this suit on behalf of Theresa Montgomery and Mattie Marten in the Circuit Court of Jasper County, Mississippi alleging that various and numerous wrongs had been done to them in connection with a loan obtained by Theresa from First Family on May 14, 1998.

The thirty-four page complaint devised and filed by Mr. Boling on behalf of Montgomery and Marten included eleven counts asserting claims for breach of fiduciary duty, fraudulent misrepresentation and/or omission, negligent misrepresentation and/or omission, civil conspiracy, gross

---

1. The court file in this case reflects that on October 29, 2001, plaintiffs filed a "Motion to Dismiss Counterclaim for Declaratory Relief of American Security Insurance Company and Union Security Insurance Company." That motion, unaccompanied by any memorandum, declares that this court lacks subject matter jurisdiction over the counterclaim; that the court lacks personal jurisdiction over plaintiffs; that venue is improper and that the counterclaim fails to state a claim upon which relief may be granted. Defendants American Security and Union Security have moved to strike the motion to dismiss on the basis that

it is "completely devoid of both argument and authority" and does not comply with Local Rule 7.2(D). The motion to strike is well taken and will be granted.

There is also pending a motion by plaintiffs for relief from second-filed case, asking the court to dismiss a complaint herein filed by First Family, American Security and Union Security asking this court to compel arbitration of plaintiffs' claims herein. The court has concluded that the case to compel arbitration should be consolidated with this case, and thus will deny as moot plaintiffs' motion for relief from second-filed case.

negligence, unconscionability, fraudulent concealment, unjust enrichment and recission, negligent, grossly negligent and wanton failure to monitor and train agents, violation of the Mississippi Unfair or Deceptive Acts and Practices Act and breach of implied covenants of good faith and fair dealing, all premised on allegations of wrongdoing relative to the May 14, 1998 loan to Montgomery, with the primary focus on alleged misrepresentations and omissions of fact relative to the sale of credit life, credit disability and credit property insurance in connection with the loan. As defendants, Mr. Boling, on behalf of his clients, named a number of nonresident companies, including First Family and several First Family affiliates, and the two insurers whose insurance products were sold to Montgomery, Union Security and American Security. Mr. Boling also named as defendants "Sherry Rohdes" and "Karen Wilburn," both of whom were identified as Mississippi residents employed by First Family who directly and actively participated in and authorized the commission of the wrongs alleged on behalf of Montgomery and Marten. Finally, Mr. Boling included as defendants a total of thirty-two fictitious parties, each identically identified as, "whether singular or plural, that individual, those individuals, that entity, or those entities who or which failed to disclose commissions defendants received, or bonuses or compensation defendants paid as a result of the contractual agreements signed by plaintiffs."

Soon after the suit was filed, the First Family defendants, joined by American Security and Union Security, removed the case to this court pursuant to 28 U.S.C. § 1446 and § 1332, asserting that the requisites for diversity jurisdiction are present in that the putative Mississippi citizenship of "Sherry Rohdes" and "Karen Wilburn" is due to be disregarded since they have been fraudulently named to defeat diversity, resulting in the required complete diversity of citizenship, and since the amount in controversy, as gleaned from the face of the complaint, exceeds $75,000.[2] *See* 28 U.S.C. § 1332 ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between … citizens of different States"). Attorney Boling promptly moved to remand on behalf of his clients, arguing that numerous proper and viable claims against the named nondiverse defendants "Sherry Rohdes" and "Karen Wilburn" were included in the complaint.

As it turns out, no Karen Wilburn has ever been employed by First Family or was involved in any loan to either plaintiff; and First Family asserts on information and belief that a Sherry Rhodes is employed by another finance company and had no involvement with any First Family loan to Theresa Montgomery. This much, in fact, was conclusively established by the deposition testimony of the plaintiffs themselves.[3] Mattie Marten testified that she had no idea of the names of the persons at the First Family office who handled the challenged loan transaction; she knew only that one was a female and the other a male. Theresa Montgomery, however, testified unequivocally that she had no reason to believe that anyone named Sherry Rhodes had anything to do

---

**2.** 28 U.S.C. § 1441(a) states, "For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded."

**3.** After the plaintiffs moved to remand, defendants sought and were ultimately granted leave to conduct remand-related discovery, which included depositions of the two plaintiffs.

with any of her loans from First Family; that she does not know anyone named Karen Wilburn and that no one named Karen Wilburn had anything to do with any of her loans; that she did not understand she had sued such persons; and that she "know[s] for a fact that the only two people [she] dealt with since [she's] been with First Family" are Sherry Wilbourne and Randy Weaver. Regarding her claims against Sherry Rhodes and Karen Wilburn, Ms. Montgomery stated plainly,

> Well, the people—the names [Sherry Rhodes and Karen Wilburn] is not any of the people who dealt with me, so how can I sue them when they are not the people who dealt with me?

In fact, she cannot, or at least cannot legitimately sue these persons who had nothing to do with her loan.[4] It necessarily follows that these two named resident defendants, Sherry Rhodes and Karen Wilburn, have been fraudulently joined.[5] *See Hart v. Bayer Corp.*, 199 F.3d 239, 246 (5th Cir.2000) (issue in fraudulent joinder analysis is whether the plaintiff has any possibility of recovery against the party whose joinder is questioned). Accordingly, as the case currently stands, there is complete diversity of citizenship.[6] That does not necessarily mean that there is diversity jurisdiction, though, for diversity jurisdiction exists only where there is complete diversity of citizenship *and* the amount in controversy between the parties exceeds $75,000. *See* § 1332. Plaintiffs submit that the amount in controversy does not exceed $75,000—or at least that defendants have not demonstrated that it

---

4. In plaintiffs' rebuttal brief, attorney Boling states that "[d]espite plaintiffs' reservation of their right to 'read and sign' each deposition transcript, Plaintiffs were not afforded this opportunity." He does not explain how this would have made any difference, though, as surely it would not, for the right to "read and sign" one's deposition does not give one the right to completely change her testimony.

5. Incredibly, in his rebuttal brief on the motion to remand, attorney Boling concedes in view of his clients' testimony only that "some doubt may now exist as to the joinder of Defendants Sherry Rhodes and Karen Wilburn." In fact, no doubt exists. These persons were not properly joined as defendants in this lawsuit and there is no arguable basis for contending otherwise.

  Mr. Boling further argues that the joinder of these defendants may have been erroneous, but that their joinder was not "fraudulent." He evidently fails to recognize that the term "fraudulent" in this context is a term of art, referring only to the absence of any arguable basis for recovery against a named defendant. *See Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir.1992) ("When speaking of jurisdiction, 'fraudulent' is a term of art. Although false allegations of jurisdictional fact may make joinder fraudulent, in most cases fraudulent joinder involves a claim against an in-state defendant that simply has no chance of success, whatever the plaintiff's motives."); *Phillips v. Evans*, No. CIV.A. 01–3388, 2002 WL 100624, *1 n. 2 (E.D.La.2002) (stating, "The term 'fraudulent joinder' as a term of art in removal/remand case law is applied both to situations where there is no viable claim against a defendant, and where there actually has been outright fraud in the recitation of facts contained in the pleadings. In cases involving the former scenario, the term 'fraudulent' may unduly convey a more negative connotation than is appropriate. Such cases would perhaps more rightly be described as 'wrongful joinder.' "); *Weekly v. Olin Corp.*, 681 F.Supp. 346, 349 (N.D.W.Va. 1987) (stating, "In this context, 'fraudulent' is a term of art and not intended to impugn the integrity of a plaintiff or counsel.... Therefore, the intent or motive of a plaintiff in joining a non-diverse defendant is immaterial....").

6. Plaintiffs have moved to amend to add as defendants the two resident individuals identified by Theresa Montgomery as having handled the subject loan transaction, Sherry Wilbourne and Randy Weaver. To facilitate its discussion of the motion to remand, the court will address the motion to amend once it has completed its consideration of the motion to remand.

exceeds $75,000—and that consequently, regardless of whether the parties are of diverse citizenship, there is no diversity jurisdiction. The court concludes otherwise.

■ The prayer for relief in plaintiffs' complaint recites that defendants' fraudulent misconduct was undertaken maliciously, willfully, wantonly, grossly negligently and in reckless and callous disregard for the rights of the plaintiffs and the public in general, and was part of a "widespread and long established pattern and practice calculated to cheat insureds such as the Plaintiffs for Defendants' own financial gain." Plaintiffs demand judgment for "compensatory damages in an amount to be proven at trial, plus punitive damages ... in an amount to be assessed by the Court," together with attorney's fees and prejudgment interest. Thus, plaintiffs have not specified an amount of damages for which recovery is sought.

■ In *Allen v. R & H Oil and Gas Co.,* 63 F.3d 1326 (5th Cir.1995), the Fifth Circuit recognized that "[w]hen the plaintiff's complaint does not allege a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds [75,000]." *Id.* at 1335 (citing *De Aguilar v. Boeing Co.,* 11 F.3d 55, 58 (5th Cir.1993)). The defendants' burden in this regard is met "if it is facially apparent that the claims are likely above [$75,000]." *Id.* (citing *De Aguilar,* 11 F.3d at 57). Otherwise, to meet its burden, the defendant "may support federal jurisdiction by setting forth the facts in controversy—preferably in the removal petition, but sometimes by affidavit—that support a finding of the requisite amount." *Id.*

The court is of the opinion in the case at bar that it is facially apparent from plaintiffs' complaint that the amount in controversy exceeds $75,000, given the nature of plaintiffs' claims and the fact of plaintiffs'

demand for punitive damages (and accompanying attorney's fees and prejudgment interest) for defendants' alleged pattern and practice of fraudulent misconduct. *See Chambley v. Employers Ins. of Wausau,* 11 F.Supp.2d 693, 695 (S.D.Miss.1998) (finding that although the complaint did not allege a specific amount of damages and the plaintiff had not quantified his damages in any way, it was apparent the plaintiff was seeking damages in excess of $75,000, and observing that "[j]uries in Mississippi frequently award damages (compensatory and punitive) in excess of $75,000 in actions based on wrongful denial of insurance benefits."); *Brasell v. Unumprovident Corp.,* No. 2:01CV202–D–B, 2001 WL 1530342 (N.D.Miss.2001) (observing that "punitive damages awards against insurance companies in Mississippi routinely exceed [$75,000]," and that "federal courts in Mississippi have consistently held that a claim for an unspecified amount of punitive damages under Mississippi law is deemed to exceed the amount necessary for federal jurisdiction"); *see also Arnold v. State Farm Fire and Cas. Co.,* 277 F.3d 772, 775 n. 3 (5th Cir.2001) (noting that district court's 6:1 ratio of compensatory to punitive damages represented a very conservative estimate and stating that "[b]ased on other Mississippi awards, it is highly unlikely that [a plaintiff would] be content with seeking a 6:1 ratio") (citing *State Farm Mut. Auto. Ins. Co. v. Grimes,* 722 So.2d 637 (Miss.1998), in which $1.25 million were awarded on a compensatory award of $1,900). Accordingly, as the case now stands, there is complete diversity of citizenship and the amount in controversy exceeds $75,000, so that there is federal subject matter jurisdiction.

■ That is not the end of this issue of remand, however, since plaintiffs, in light of the revelation that the resident defendants they sued were not involved in the

subject transaction, have moved to amend their complaint to add Sherry Wilbourne and Randy Weaver as defendants. The joinder of these persons, if allowed, would destroy diversity and deprive the court of jurisdiction, as a result of which remand would follow. The court, though, having considered plaintiffs' request, concludes that it should be denied.

The removal statute, 28 U.S.C. § 1447(e), provides that "[i]f after removal plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the state court." In *Hensgens v. Deere & Company*, 833 F.2d 1179 (5th Cir.1987), the Fifth Circuit addressed the standard applicable to cases where a plaintiff seeks to amend to add a non-diverse defendant following removal of an action on the basis of diversity jurisdiction. The court, after cautioning that the district court should scrutinize an amendment naming a new nondiverse defendant in a removed case more closely than an ordinary amendment, identified, by example, a number of factors for the court to take into account when considering such a request, including "the extent to which the purpose of the amendment is to defeat federal jurisdiction, whether plaintiff has been dilatory in asking for amendment, whether plaintiff will be significantly injured if amendment is not allowed, and any other factors bearing on the equities." *Id.* at 1182.

Plaintiffs argue that since the identity of Randy Weaver and Sherry Wilbourne was only recently revealed in discovery, then their request to amend cannot be considered dilatory. Of course, this argument conveniently fails to account for the fact that the identity of these persons was only recently revealed *by the plaintiffs*, who have known the identity of these persons since this suit was commenced.[7] In the court's opinion, given that Theresa Montgomery has known all along the identity of the persons with whom she dealt in obtaining her May 1998 loan from First Family, the plaintiffs have unquestionably been dilatory in asking for this amendment ten months into the litigation.

In any event, it is manifest to the court that plaintiffs have no cognizable basis for suing either Sherry Wilbourne or Randy Weaver, and for that reason, their request to amend is not well taken. Further, even if plaintiffs had some conceivable basis for proceeding against these proposed defendants, the court is convinced that their purpose in undertaking to sue these resident defendants is solely to defeat diversity jurisdiction. Finally, the equities in this situation weigh decidedly in favor of preventing these plaintiffs from drawing more parties into this litigation, the genesis of which is unknown to one plaintiff and the basis for which is unknown to the other.

Mattie Marten indicated in her deposition that while she does understand that she and her daughter are suing First Family over her daughter's May 14, 1998 loan, she does not know the basis for the suit:

Q. Do you understand what you're suing them about?

---

**7.** Plaintiffs' rebuttal brief asserts that the deposition of Theresa Montgomery

presented the first notice to Plaintiffs of any potential error in the naming of individual defendants Sherry Rhodes and/or Karen Wilburn, if such a mistake was actually made by Plaintiffs. These depositions also presented the first notice to Plaintiffs of the existence of additional agents and/or employees of Defendant First Family who were indisputably involved in the May 14, 1998 loan transaction....

On its face, in light of Theresa Montgomery's clear deposition testimony, this argument makes no sense and is patently disingenuous.

A. Really I don't. I really don't understand.

. . . . .

Q. When was the first time you learned First Family had done something wrong?

A. Today.

. . . . .

Q. Ma'am, you just said that you just learned that you might have a cause of action today. Did you bring a lawsuit in August of 2001 without knowing whether anybody had done anything wrong at First Family?

A. Yes. Yes.

. . . . .

Q. Do you know in your own words what you believe anybody at First Family did that would—may have been wrong to you?

A. No, I don't.

Q. Do you know anything they did to your daughter that you think was wrong?

A. No.

In her testimony, Theresa Montgomery testified that her mother was responsible for getting this case started, and indicated only a marginal awareness of the particulars of the case. She testified as follows:

Q. When was the first time that you thought you might have a claim in this case?

A. Today.

Q. Well, you filed a lawsuit before today.

A. Yes. I went through my mother, that everything is basically been done through my mother. She's been pretty much talking to people.

Q. You didn't know you had a lawsuit before today?

A. I know I had one but as far as—I didn't know it was this deep like this here.

Q. Have you ever met with an attorney before today?

A. No.

Q. You never talked to anybody about your case before today?

A. Besides yesterday. . . .

. . . . .

Q. So before yesterday . . . you didn't know you had a lawsuit filed?

A. Yes. I knew through my mom. But as far as knowing exactly—exactly what was going on, no.

When asked about the loan that forms the basis of the lawsuit, Montgomery did identify Sherry Wilbourne, the manager of the First Family office where Montgomery applied for the loan, as having played a role in the loan transaction. But her role consisted of nothing more than directing Montgomery to Randy Weaver, who actually handled the details of the loan transaction. Montgomery testified,

Q. [A]s far as Sherry Wilbourne is concerned, she didn't go over any documents with you?

A. No.

Q. She didn't instruct you in any way with regard to insurance?

A. No.

Q. She didn't tell you you had to buy insurance?

A. No.

. . . . .

Q. You don't have a claim against Sherry Wilbourne relating to the May 14th loan with First Family, do you?

A. No.

Obviously, in light of Montgomery's testimony (which was given *before* plaintiffs filed their motion to amend), there is no

basis for adding Sherry Wilbourne as a defendant.

The principal alleged putative basis for adding Randy Weaver as a defendant is that he either misrepresented to Montgomery that she was required to purchase credit life, credit disability and credit property insurance relative to her loan and/or that he failed to disclose to her that such insurance was not required or could be purchased from another source. Yet when asked in her deposition to read the papers she had signed, including the "Insurance Notice to Loan Applicant" which she signed reflecting her election of these coverages, Montgomery first indicated that she was unaware until the date of her deposition that she had even purchased insurance in connection with her loan.[8] She then agreed that she was not prevented from reading these documents, of which she was provided a copy to take home; upon reviewing the documents in her deposition, she agreed that had she read the documents at the time of the transaction, she would have known that premiums were included in her loan for these various insurance coverages and she would have known that this insurance was not required for her loan, since those facts were specifically included in the loan documents; and she admitted that she simply chose not to read the documents. Given her testimony in this regard, Montgomery has no viable claim against Weaver. *See Strong v. First Family Financial Services, Inc.,* 202 F.Supp.2d 536 (S.D.Miss. 2002); *Harrison v. Commercial Credit Corp.,* Civ. Action No. 4:01CV151LN, 2002 WL 548281 (S.D.Miss.2002). Plaintiffs' motion to amend will be denied.

For all of the foregoing reasons, it is ordered that plaintiffs' motion to amend is denied; their motion to remand is denied; defendants' motion to strike plaintiffs' motion to dismiss counterclaim is granted and such motion is therefore stricken; the motion for relief from second-filed suit is denied as moot; and all other motions presently pending in this case are denied as moot.

---

**8.** This is not surprising, given that neither plaintiff, some six months into the lawsuit, seemed to know what the suit is about.