**CENTRAL ILLINOIS CARPENTERS HEALTH AND WELFARE TRUST FUND, et al., Plaintiffs,**

v.

**PHILLIP MORRIS, INCORPORATED, et al., Defendants.**

**No. 97–CV–568–WDS.**

United States District Court, S.D. Illinois.

March 16, 1998.

L. Thomas Lakin, Lakin Law Firm, Wood River, IL, for Central Ill. Carpenters Health & Welfare Fund, Central Laborers Welfare Fund, East Central Ill. Pipe Trades Health and Welfare Fund, Local 100 Laborers Health& Welfare Fund, Local 231 Laborers Health & Welfare Fund, Local 996 Laborers Health & Welfare Fund, Midwestern Teamsters Health and Welfare Fund, NECA-IBEW Welfare Trust Fund, Northern Ill. & Iowa Laborers Health & Welfare Fund, Local 965 Operating Engineers Health & Welfare Fund, Railroad Maintenance & Indust. Health & Welfare, Local 218 Sheet Metal Workers Health & Welfare Fund, Southern Ill. Laborers & Employers Health & Welfare and Teamsters & Employers Welfare Trust of Ill., plaintiffs.

Gail G. Renshaw, Bobroff, Hesse, Clayton, MO, for NECA IBEW Welfare Fund, Local 32 Painters Health & Welfare Fund, Chicago Area I B of T Health and Welfare Fund, Local 703 Intern. Broth. of Teamsters, Local 710 Intern. Broth. of Teamsters Health & Welfare Fund, Local 743 IBT Health & Welfare Trust, Local 744 Beverage industry IBT Health & Welfare Fund, Local 27 Glazing Employers & Glaziers' Union Health & Welfare Fund, Suburban Teamsters of Northern

Ill. Welfare Fund, Line Const. Ben. Fund, Local 100-A United Food & Commercial Workers Health & Welfare Fund, Local 9 IBEW Health and Welfare Trust Fund, plaintiffs.

David B. Love, Thomas J. Frederick, Winston & Strawn, Chicago, IL, Lisa A. Pake, Alan C. Kohn, Kohn, Shands et al., St. Louis, MO, Lawrence R. Desideri, Dan K. Webb, Chicago, IL, for Philip Morris Inc., defendant.

Thomas F. Gardner, Jones, Day et al., Chicago, IL, for R.J. Reynolds Tobacco Co., plaintiff.

Andrew R. McGaan, James C. Munson, Kirkland & Ellis, Chicago, IL, for Brown & Williamson Tobacco Corp., defendant.

Adam I. Stein, Mark G. Cunha, Simpson, Thacher et al., New York City, Stephen M. Schoenbeck, Lathrop, Gage et al., St. Louis, MO, for B A T Industries P.L.C., defendant.

Kurt E. Reitz, J. William Newbold, III, Thompson Coburn, Belleville, IL, J. William Newbold, III, Thompson Coburn, St. Louis, IL, for Lofillard Tobacco Co., Inc., defendant.

James A. Morsch, Harold C. Wheeler, Butler, Rubin et al., Chicago, IL, Michael M. Fay, Kasowitz, Benson et al., New York City, for Liggett Group, Inc., American Tobacco Co., Inc., defendants.

Kenneth J. Mallin, Mark W. Eggert, Rodney W. Ott, Bryan Cave, St. Louis, MO, Michael E. Wiles, Christopher M. Green, R. Townsend Davis, Debevoise & Plimpton, New York City, Michael D. Murray, St. Louis, MO, for Council for Tobacco Research USA Inc., defendant.

Larry E. Hepler, Burroughs, Hepler et al., Edwardsville, IL, Deborah L. Kuhn, Altheimer & Gray, Chicago, IL, for Tobacco Institute, Inc., defendant.

Richard E. Boyle, Thomas R. Peters, Gundlach, Lee et al., Belleville, IL, David B. Love, Winston & Strawn, Chicago, IL, for Smokeless Tobacco Council, Inc., defendant.

Thomas E. Jones, Walker & Williams, Belleville, IL, for Weeke Wholesale Co., Dearborn Wholesale Grocers, Inc., World Wide Tobacco, Inc., Zenith Tobacco Corp.

Republic Tobacco Management Corp., RJR Nabisco, Inc., RJR Nabisco Holdings Corp., defendants.

Michael T. Hannafan, Cory A. Johnson, Chicago, IL, Aime L. Hendricks, Thomas J. McCormack, New York City, for British American Tobacco Co., Ltd., defendant.

Mark W. Eggert, Bryan Cave, St. Louis, MO, for U.S. Tobacco Sales & Marketing Research-USA, Inc., defendant.

Victoria I. Goldson, Shevon L. Harris, Lewis, Rice et al., St. Louis, Mo, Michael C. Lasky, Davis & Gilbert, New York City, for Hill & Knowlton, defendant.

## *MEMORANDUM & ORDER*

STIEHL, District Judge.

Before the Court is plaintiffs' motion to remand this cause of action to the Circuit Court for the Third Judicial Circuit, Madison County, Illinois.

### *BACKGROUND*

On May 30, 1997, plaintiffs, fourteen named multi-employer health and welfare funds, filed suit, on behalf of themselves and all others similarly situated, in the Circuit Court for the Third Judicial Circuit, Madison County, Illinois. In their seven count class action complaint, plaintiffs named as defendants six major tobacco manufacturers, four related tobacco trade organizations, and five Illinois tobacco distributors. All of the named tobacco manufacturers and tobacco trade organizations are residents of states other than Illinois, and therefore, are diverse defendants. However, the five named tobacco distributors, as indicated above, are residents of Illinois, and therefore, are nondiverse defendants. According to the state court docket, at the time plaintiffs filed their original complaint, no summons were issued at the request of plaintiffs.

Subsequently, on June 6, 1997, plaintiffs sought leave in the state court action to file an amended complaint. That same day, the state court granted plaintiffs' request and plaintiffs filed their first amended complaint. By plaintiffs' own admission, the amended

complaint does not substantively alter the original complaint. Rather, the amended complaint adds two additional funds as plaintiffs and four diverse tobacco entities as defendants. Again, the state court docket indicates that no summons were issued to any of the defendants named in either the original or amended complaint. Also, none of the defendants were served with notice of the plaintiffs' motion for leave to amend, the order granting plaintiffs' motion for leave to amend, or the first amended complaint. In fact, according to defendants, none of the defendants learned of the existence of the first amended complaint until plaintiffs filed their motion to remand.

It is unclear from the record, but the diverse defendants named in the original complaint somehow received notice of the action pending against them and took steps to obtain a copy of the original complaint. Accordingly, on June 30, 1997, all of the diverse defendants named in the original complaint filed their notice of removal. Neither the nondiverse tobacco distributors nor the additionally named diverse tobacco entities joined in the removal petition.

In their removal petition, defendants invoked this Court's subject matter jurisdiction in two ways. First, defendants assert that this Court has diversity jurisdiction because plaintiffs named the nondiverse distributors for the sole purpose of destroying this Court's diversity jurisdiction. Therefore, defendants argue, joinder of the nondiverse defendants is fraudulent. Second, defendants assert that this Court has federal question jurisdiction because all of the claims alleged in plaintiffs' complaint are preempted under § 502(a) of the Employee Retirement Income Security Act of 1974 (ERISA), as amended, 29 U.S.C. § 1132(a).

On July 30, 1997, plaintiffs timely filed their motion to remand this action to state court. Plaintiffs offer three arguments in support of their motion. First, plaintiffs argue that this Court lacks diversity jurisdiction. Second, plaintiffs argue that their claims against the defendants are not preempted by ERISA. Third, plaintiffs argue that the removal petition is procedurally defective because not all of the defendants

joined in the removal. Defendants timely responded to plaintiffs' motion to remand and plaintiffs timely filed a reply brief.

### ANALYSIS

■ In order for a defendant properly to remove a case to federal court, the court must have jurisdiction over the case. 28 U.S.C. § 1441(a). Jurisdiction exists in a removal action if the case might have been originally brought in a federal court. *Id.*; *Grubbs v. General Electric Credit Corp.*, 405 U.S. 699, 702, 92 S.Ct. 1344, 31 L.Ed.2d 612 (1972). This can be accomplished in either of two ways. First, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Jurisdiction based on § 1331 is known as federal question jurisdiction. *Id.* Second, "the district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different states...." 28 U.S.C. § 1332. Jurisdiction based on § 1332 is known as diversity jurisdiction. *Id.*

#### A. PROCEDURAL DEFECTS IN THE REMOVAL PETITION

As a threshold matter, the Court must first address plaintiffs' argument that the defendants' removal petition is procedurally defective. Plaintiffs offer two procedural defects as grounds for this Court to remand the case to state court. First, plaintiffs claim that the nondiverse defendants needed to join in the removal petition. Second, plaintiffs claim that the additional defendants named in the first amended complaint also needed to join in the removal petition. Thus, according to plaintiffs, the removal petition is procedurally defective because not all defendants joined in it.

■ It is well settled that "[a] petition for removal fails unless all defendants join it." *Roe v. O'Donohue*, 38 F.3d 298, 301 (7th Cir.1994) *citing Hanrick v. Hanrick*, 153 U.S. 192, 14 S.Ct. 835, 38 L.Ed. 685 (1894) *and Torrence v. Shedd*, 144 U.S. 527, 12 S.Ct. 726, 36 L.Ed. 528 (1892). In order to "join"

the petition for removal, all defendants must support it in writing or explain why written support is unnecessary. *Roe,* 38 F.3d at 301, *citing Northern Illinois Gas Co. v. Airco Industrial Gases,* 676 F.2d 270, 272–73 (7th Cir.1982) (emphasis added). Thus, the removal petition is procedurally defective if all defendants do not join it or if the defendants who did join in the removal petition fail to explain why such written support is unnecessary. However, nominal or formal parties need not join in the removal petition. *Shaw v. Dow Brands, Inc.,* 994 F.2d 364, 369 (7th Cir.1993); *Northern Illinois Gas,* 676 F.2d at 272. A defendant is a nominal party if there is no reasonable basis for predicting that it will be held liable. *Shaw,* 994 F.2d at 369.

■ With regard to plaintiffs' first assertion, that the removal petition is defective because the nondiverse defendants did not join in it, the defendants, in their removal petition, adequately explained why it was unnecessary for those defendants to join in the removal petition. Specifically, the defendants originally seeking removal asserted that those nondiverse defendants were fraudulently joined. Thus, if this Court were to find that the nondiverse defendants were in fact fraudulently joined, and therefore nominal parties under *Shaw,* they did not need to join in the removal petition. If, on the other hand, the Court were to find that the nondiverse defendants were not fraudulently joined, then the case could[1] be remanded on those grounds. As a result, resolution of the fraudulent joinder issue will resolve any question as to the effect of the failure of the nondiverse defendants to join in the removal petition.[2]

■ More problematic, however, is plaintiffs second assertion that the failure of the diverse defendants named in the first amended complaint to join in the removal petition is a procedural defect requiring remand. Plaintiffs claim that since the diverse defendants named in the original complaint had notice of the action against them, "due dili-

gence mandates that they ascertain the status of the proceedings at the time of filing their notice." According to plaintiffs, such an exercise of due diligence would have revealed that plaintiffs filed an amended complaint. Therefore, according to plaintiffs, defendants would have been able to obtain that amended complaint which would have revealed that plaintiffs named additional defendants. Plaintiffs assert that all of the defendants named in the amended complaint should have then joined in the removal petition. In essence, plaintiffs seek to impose a burden on defendants who have been served or otherwise have notice of the claim against them, to notify all co-defendants who have not been served or who otherwise do not have notice of the claim, and to get them to join in the petition for removal.

In *Roe,* 38 F.3d at 301, the Seventh Circuit noted that "[a] party may be able to establish that joinder is unnecessary—as it would be if, for example, the non-joining defendant were a nominal party or had not been served with process. . . ." Implicit in the court's analysis is that any unserved defendants do not need to join in the petition for removal. *See Gossmeyer,* 128 F.3d at 489.

In the case at hand, plaintiffs never undertook to serve the defendants added in their amended complaint (much less the defendants named in the original complaint). Therefore, applying the court's analysis in *Roe* to the facts of this case, the Court finds that the subsequently added diverse defendants' failure to join in the petition for removal is not a procedural defect requiring remand. Those defendants, upon discovering the pending litigation against them, immediately sought to join in the petition for removal. It is clear, therefore, that absent **plaintiffs** failure to effect service, those subsequently added defendants would have joined in the original removal petition. As a result, this Court declines plaintiffs' invitation to impose a burden on those defendants who received notice to seek out and notify all codefendants who have not been served or

---

1. Of course, the remand issue also turns on the Court's determination of whether this entire cause of action is preempted by ERISA.

2. Further, the fact that these defendants were not served at the time of removal means that they were not required to join in the removal petition. *See Gossmeyer v. McDonald,* 128 F.3d 481, 489 (7th Cir.1997).

otherwise received notice. Having resolved the threshold procedural issues raised by plaintiff, the Court must now turn to the substantive merits of plaintiffs' motion to remand.

## B. *FRAUDULENT JOINDER*

■■■ Defendants have first sought to invoke this Court's diversity jurisdiction. As previously discussed, "[w]hen a plaintiff files in state court a civil action over which the federal district courts would have original jurisdiction based on diversity of citizenship, the defendant or defendants may remove the action to federal court, 28 U.S.C. § 1441(a), provided that no defendant 'is a citizen of the state in which such action is brought,' § 1441(b)." *Caterpillar Inc. v. Lewis,* 519 U.S. 61, 117 S.Ct. 467, 472, 136 L.Ed.2d 437 (1996) (citation omitted). Complete diversity is required; the citizenship of each plaintiff must be different from the citizenship of each defendant, *Caterpillar,* 519 U.S. 61, 117 S.Ct at 472, and any defect in the removal procedure, or the lack of subject matter jurisdiction requires remand. *In re Amoco Petroleum Additives Co.,* 964 F.2d 706, 708 (7th Cir.1992). If there is a dispute as to whether the Court has diversity jurisdiction on removal, the burden is on the party seeking removal to establish the right. *Jones v. General Tire & Rubber Co.,* 541 F.2d 660 (7th Cir.1976).

"Diversity jurisdiction cannot be destroyed by joinder of nondiverse parties if such joinder is fraudulent." *Gottlieb v. Westin Hotel Co.,* 990 F.2d 323, 327 (7th Cir.1993). The rule in this Circuit governing fraudulent joinder in removal cases was established in *Poulos v. Naas Foods, Inc.,* 959 F.2d 69 (7th Cir.1992). In *Poulos,* the court noted that, "[a]lthough false allegations of jurisdictional fact may make joinder fraudulent, ... in most cases fraudulent joinder involves a claim against an in-state defendant that simply has no chance of success, whatever the plaintiff's motives." *Id.* 959 F.2d at 73. "Fraudulent joinder occurs either when there is no possibility that a plaintiff can state a cause of action against nondiverse defendants in state court, or where there has been outright fraud in plaintiff's pleading of jurisdictional facts." *Hoosier Energy Rural Elec. v. Amoco Tax Leasing,* 34 F.3d 1310, 1315 (7th Cir.1994) *quoting Gottlieb,* 990 F.2d at 327.

■■■ In order for an out-of-state defendant to establish fraudulent joinder, it must show that, "after resolving all issues of fact *and law* in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant." *Poulos,* 959 F.2d at 69, *citing B. Inc. v. Miller Brewing Co.,* 663 F.2d 545, 549 (5th Cir.1981) (emphasis in original). "At the point of decision, the federal court must engage in an act of prediction: is there any reasonable possibility that a state court would rule against the non-diverse defendant?" *Id.* The removing defendant bears a heavy burden to establish fraudulent joinder. *Id.* The defendant does not, however, need to negate any possible theory that the plaintiff might allege in the future, only the present allegations count. *Id.,* at 74, *citing Dodd v. Fawcett Publications, Inc.,* 329 F.2d 82, 85 (10th Cir.1964).

Thus, in the case at hand, defendants must demonstrate that plaintiffs' present claims against the nondiverse defendant distributors have no chance of success in state court. Plaintiffs specifically name these distributors in Counts I, II, and III,[3] alleging that they violated the Illinois Antitrust Act, that they are guilty of fraud and misrepresentation, and that they violated Illinois' Fraud and Deceptive Practices Act. 815 ILCS 505/1 et seq. The Court, therefore, must determine whether plaintiffs have any chance of successfully litigating any one of these claims in state court.

### 1. *ILLINOIS ANTITRUST ACT*

Plaintiffs, in Count I of their complaint, allege that all of the defendants, including

---

**3.** Plaintiffs have not directed Counts IV or V at the nondiverse defendants. Count VI, although directed at the nondiverse defendants (among others), does not contain any allegations against those nondiverse defendants. Specifically, plaintiffs have neither asserted that the distributors made any warranties to the consumers nor are there any allegations of privity between the distributors and consumers. Finally, Count VII of plaintiffs complaint, a restitution count, contains no allegations against the nondiverse defendants. Unless plaintiff can state a substantive claim against the nondiverse defendants, restitution is most certainly unavailable.

the distributors, have violated the Illinois Antitrust Act,[4] 740 ILCS 10/1 *et seq.* The stated purpose of the Illinois Antitrust Act

is to promote the unhampered growth of commerce and industry throughout the State by prohibiting restraints of trade which are secured through monopolistic or oligarchic practices and which act or tend to act to decrease competition between and among persons engaged in commerce and trade, whether in manufacturing, distribution, financing, and service industries or in related for-profit pursuits.

740 ILCS 10/2. In § 3 of the Act, the Illinois Legislature enumerated the following specific violations:

Every person shall be deemed to have committed a violation of this Act who shall: (1) Make any contract with, or engage in any combination or conspiracy with, any other person who is, or but for a prior agreement would be, a competitor of such person:

a. for the purpose or with the effect of fixing, controlling, or maintaining the price or rate charged for any commodity sold or bought by the parties thereto, or the fee charged or paid for any service performed or received by the parties thereto;

b. fixing, controlling, maintaining, limiting, or discontinuing the production, manufacture, mining, sale or supply of any commodity, or the sale or supply of any service, for the purpose or with the effect stated in paragraph a. of subsection (1);

c. allocating or dividing customers, territories, supplies, sales, or markets, functional or geographical, for any commodity or service; or

(2) By contract, combination, or conspiracy with one or more other persons [sic][to] unreasonably restrain trade or commerce; or

(3) Establish, maintain, use, or attempt to acquire monopoly power over any substantial part of trade or commerce of this State for the purpose of excluding competition or of controlling, fixing, or maintaining prices in such trade or commerce....

In this case, although plaintiffs allege that defendant distributors have violated the Illinois Antitrust Act,[5] the plaintiffs entirely fail to describe (either in their complaint or in their motion to remand) how the distributors violated the Act. The plaintiffs contend that the defendants allegedly entered into certain agreements. Plaintiffs' allegations concerning the agreements, however, include the following acts: shifting liability costs to health care markets in order to maintain tobacco industry profits, restricting output by not competing on the basis of product innovations including the development of safer cigarettes, and eliminating competition on health-related claims among tobacco manufacturers. The terms of the alleged agreements do not in any way suggest specific involvement by distributors.

■ Further, in Count I, the extent of plaintiffs' allegations against the distributors is limited to a single paragraph. Only in ¶ 227(g) do plaintiffs assert their claim that "Defendant Distributors participated in distributing advertisements and displays with misleading statements of defendant cigarette companies and trade associations that intended to deceive Plaintiffs, their participants and beneficiaries, and the general public regarding the addictive nature of nicotine." This claim, that defendant distributors participated in the alleged combination or conspiracy by their distribution of advertisements and displays, falls short of violating the Illinois Antitrust Act. Noticeably, the language of the complaint reads "distributing advertisements and displays with misleading statements *of defendant cigarette companies and trade associations* that intended to deceive

---

**4.** Plaintiffs also allege violations of 740 ILCS 10/5(3). That section deals with the exception of public utilities or telecommunication carriers from the Antitrust Act. The reference to this section appears to be in error. Thus, giving plaintiffs the benefit of the doubt, the Court finds that they intended to refer to 740 ILCS 10/3(3).

**5.** Although plaintiffs consistently use the term "conspiracy" in the complaint, they have not set forth any claims for statutory or common law conspiracy. Thus, all of the allegations regarding the alleged conspiracy are directed to their claim under the Illinois Antitrust Act.

Plaintiffs ... regarding the addictive nature of nicotine." (emphasis added). Plaintiffs do not claim in Count I that defendant distributors made misleading statements or were even aware of the alleged nature of the ads and displays. Plaintiffs merely contend that these defendants distributed advertisements and displays containing such statements.

■■■ Thus, under § 3(1) of the Act, plaintiffs are unable to state a claim against the distributors because the defendant manufacturers, absent a contract, combination, conspiracy, or prior agreement, would not be in competition with the defendant distributors. Similarly, under § 3(2), plaintiffs have failed to make any allegations that defendant distributors, by contract, combination, or conspiracy unreasonably restrained trade or commerce. The act (or acts) of assisting in the distribution of advertisements and displays that may contain misleading statements of a third party, is not an effort to unreasonably restrain trade or commerce under the plain language of the Act. Finally, plaintiffs entirely fail to allege how the distributors, by participating and assisting in distributing advertisements and displays violated § 3(3). Specifically, plaintiffs have failed to allege that the distributors established, maintained, used, or attempted to acquire monopoly power for the purpose of controlling, fixing, or maintaining prices.

■■■ As a result, the Court finds that the assisting in the distribution of advertisements and displays, standing alone, is insufficient to form the basis for a claim for violating the Illinois Antitrust Act because that conduct is clearly beyond the scope of that Act. The Court further finds that plaintiffs would have no chance of recovering against the defendant distributors in state court under the Illinois Antitrust Act.

6. A similar analysis follows from a claim of negligent misrepresentation. The elements are: (1) a false statement of material fact; (2) carelessness or negligence in ascertaining the truth of the statement by defendant; (3) intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; (5) damage to the other party resulting from such reliance; and (6) a duty owed by defendant to plaintiff to communicate accurate information.

## 2. FRAUD AND MISREPRESENTATION

■■■ Plaintiffs allege in Count II that the nondiverse defendant distributors are guilty of fraud and misrepresentation. To successfully prove actual fraud under Illinois law, plaintiffs must show that: (1) distributor defendants made a false statement of material fact; (2) they knew or believed such statement to be false; (3) the statement was made with the intent to induce action by another in reliance on the statement; (4) plaintiffs acted in reliance on the truthfulness of the statement; and (5) injury resulted from the reliance. *Athey Products Corp. v. Harris Bank Roselle,* 89 F.3d 430, 434 (7th Cir.1996). A plaintiff alleging fraud has a heavy burden— "proof of intent to defraud by clear and convincing evidence." *Id.*

■■■ Plaintiffs have not asserted that defendant distributors actively misstated and misrepresented the nature of nicotine. They do contend, however, that defendant distributors assisted in distributing advertisements that contain "misleading statements of said cigarette companies and trade associations...." According to plaintiffs' allegation, the false statements are those of the cigarette companies and trade associations, not the distributors. In addition, plaintiffs neither claim that defendant distributors made false statements with the intent to induce *plaintiffs* to act in reliance on those statements, nor do they claim that they did in fact act in reliance. Rather, plaintiffs assert that the distributors intended that the plaintiffs' *participants and beneficiaries* act in reliance on the alleged false statements, and that the participants and beneficiaries did so rely. Because plaintiffs failed to state a valid cause of action for fraud against the defendant distributors, plaintiffs cannot succeed with a claim of actual fraud in state court.[6]

*Weisblatt v. Chicago Bar Assn.,* 292 Ill.App.3d 48, 225 Ill.Dec. 993, 684 N.E.2d 984, 990 (1997). Because plaintiffs in this case failed to allege an affirmative misstatement regarding the nature of nicotine, action by the plaintiffs in reliance on the truth of the statement, or a duty owed by defendant distributors to plaintiffs to disclose accurate information regarding the nature of nicotine, plaintiffs have no colorable claim based on negligent misrepresentation.

Similarly, plaintiffs are unable to maintain a claim of constructive fraud. In order to proceed with a claim of constructive fraud under Illinois law, plaintiffs must allege a breach of a legal or equitable duty with a tendency to deceive others. *Kohler v. Leslie Hindman, Inc.*, 80 F.3d 1181, 1188 (7th Cir. 1996); *Beaton & Assoc., Ltd. v. Joslyn Mfg. & Supply Co.*, 159 Ill.App.3d 834, 111 Ill.Dec. 649, 512 N.E.2d 1286, 1291 (1987). Plaintiffs simply fail to allege that defendant distributors owed a duty to plaintiffs. Any failure to disclose knowledge of the addictive qualities of nicotine is not actionable until plaintiffs allege a duty to so disclose. Thus, plaintiffs have no colorable action for fraud and misrepresentation against distributor defendants in state court.

### 3. VIOLATION OF FRAUD AND DECEPTIVE PRACTICES ACT

Plaintiffs allege in Count III that distributor defendants violated Illinois' Fraud and Deceptive Practices Act. 815 ILCS 505/1 *et seq.* To state a cause of action under the Act, plaintiffs must set forth specific facts that show: (1) a deceptive act or practice; (2) an intent by defendants that plaintiffs rely on the act or practice; and (3) that the deception occurred during trade or commerce. *State Farm Fire and Casualty Co. v. Trousdale*, 285 Ill.App.3d 566, 220 Ill.Dec. 711, 673 N.E.2d 1132, 1135 (1996). Plaintiffs have failed to plead that defendant distributors intended that *plaintiffs* rely on an alleged deceptive act. Plaintiffs instead erroneously plead that these defendants intended for *the participants and beneficiaries* of the plaintiffs to rely on an alleged deceptive act. Therefore, plaintiffs have no colorable cause of action under the Act.

Based upon the foregoing, the Court finds that plaintiffs' claims against the nondiverse distributor defendants have no chance of success in state court. *See Poulos*, 959 F.2d at 69. Therefore, the Court finds that

defendant distributors were fraudulently joined for the sole purpose of destroying this Court's diversity jurisdiction. Having been fraudulently joined, the Court further finds that these same defendants are nominal parties and, as a result, did not need to join in the removal petition. *See Roe*, 38 F.3d at 301 Thus, this Court has diversity jurisdiction over the parties to this cause of action.

### C. ERISA PREEMPTION

Defendants have also sought to invoke this Court's federal question jurisdiction. Specifically, defendants assert that plaintiffs' claims are really governed by ERISA, 29 U.S.C. § 1001 *et seq.* According to defendants, although plaintiffs' claims are not expressly based on ERISA, under the doctrine of "complete preemption" the state law claims were properly removed to this Court.

The Seventh Circuit, in *Rice v. Panchal*, 65 F.3d 637, 639 (7th Cir.1995), thoroughly analyzed the two ways in which ERISA can preempt state law actions. The first way is under the doctrine of "conflict preemption." *See* § 514(a), as amended in 29 U.S.C. § 1144(a). The second way is under the doctrine of "complete preemption," *See* § 502(a), as amended in 29 U.S.C. § 1132(a). "The difference between complete preemption under § 502(a) and conflict preemption under § 514(a) is important because complete preemption is an exception to the well-pleaded complaint rule that has jurisdictional consequences." *Id.* 65 F.3d at 640. The language used in " §§ 502(a) and 514(a) underscores the significant difference in the scope of the two sections." *Id.* (citations omitted).

### 1. SECTION 514(A) PREEMPTION[7]

Under § 514(a),

[e]xcept as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall

---

7. In this case, defendants, in their removal petition, refer only to § 502(a), the complete preemption provision. Despite this, in their motion to remand, plaintiffs discuss the preemptive force of § 514(a) and entirely fail to discuss the preemptive force of § 502(a). In their reply brief, plaintiffs did discuss, albeit briefly, preemption under § 502(a). Defendants, however, in response to plaintiffs' motion to remand, state that they did not argue preemption under § 514(a). Rather, defendants have asserted preemption under § 502(a). Nevertheless, the Court will address the § 514(a) preemption issue as a result of plaintiffs' raising the issue.

supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in Section 1003(a) of this title and not exempt under section 1003(b) of this title.

Because "Congress has blotted out (almost) all state law on the subject of [employee benefit plans]," a state law claim which "relates to" an employee benefit plan implicates ERISA, regardless of the label the plaintiff attaches to the claim. *Bartholet v. Reishauer, A.G. (Zurich)*, 953 F.2d 1073, 1075 (7th Cir.1992). "Any other approach allows crafty drafting to defeat the statutory right to remove." *Id.*

As indicated above, the preemption issue under § 514(a) hinges upon whether plaintiffs' state law claims "relate to" the ERISA plan. The Supreme Court has repeatedly indicated that the "related to" clause should be interpreted extremely broadly. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45–46, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). The clause is not limited to state laws specifically designed to affect employee benefit plans, but may also preempt claims which indirectly affect benefit plans. *Ingersoll–Rand v. McClendon*, 498 U.S. 133, 139, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990). However, ERISA preemption is not without limits. In *Shaw*, the Supreme Court held that "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw*, 463 U.S. at 100 n. 21. While ERISA's preemption provision is broad, "the word 'related' must not be taken literally." *Pohl v. National Benefits Consultants, Inc.*, 956 F.2d 126, 128 (7th Cir.1992). In *Rice*, the Court specifically noted that the "broadly worded provision routinely preempts state law claims that affect the structuring of ERISA plans, or that purport to determine the substantive rights and duties among the parties to its creation and administration." *Id.*, 65 F.3d at 645 (footnote omitted).

In the case at hand, plaintiffs neither alleged any state law claims that affect the structuring of the plans, nor do they seek to determine the substantive rights and duties among parties to its creation and administration. Thus, if plaintiffs' claims are preempted, they are not preempted under § 514(a). Plaintiffs' attempt to recast the defendants' federal question jurisdiction argument as an assertion that plaintiffs' claims are preempted by § 514(a) is like trying to fit a square peg in a round hole, and any further discussion on this issue is unnecessary.

### 2. SECTION 502(A) PREEMPTION

 Defendants have sought to invoke the § 502(a) complete preemption provision of ERISA. Removal based on federal question jurisdiction is typically available only when the plaintiff's well-pleaded complaint raises issues of federal law. *Gully v. First Nat'l Bank*, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936). Ordinarily, federal preemption is a defense to a suit, and as a defense not appearing on the face of the complaint, does not authorize removal. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). However, the complete preemption doctrine excepts certain types of cases from the well-pleaded complaint rule. *Id.* This doctrine recognizes that Congress "may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Id.* 481 U.S. at 63–64, 107 S.Ct. 1542. The preemptive scope of ERISA is extremely expansive. *Id.* 481 U.S. at 64–67, 107 S.Ct. 1542. Thus, removal may in fact be proper if plaintiffs' state law claims are preempted by ERISA, even though the complaint does not plead a federal question. Conversely, if plaintiffs' claims against defendants are not subject to ERISA preemption, this Court lacks federal question jurisdiction.

ERISA's complete preemption provision is contained in § 502(a). Under § 502(a),

A civil action may be brought—

. . . . .

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any

provisions of this subchapter or the terms of the plan....

In *Jass v. Prudential Health Care Plan, Inc.,* 88 F.3d 1482 (7th Cir.1996), the Seventh Circuit again discussed the differences between complete preemption and conflict preemption. Relying on its decision in *Rice,* the court developed a three-part test for determining whether a claim is within the preemptive scope of § 502(a). *See Jass,* 88 F.3d at 1487. The elements of that test are:

> (1) whether the "plaintiff [is] eligible to bring a claim under the section[,]" [*Rice,* 65 F.3d] at 641[;] (2) whether the plaintiff's "cause of action falls within the scope of an ERISA provision that the plaintiff can enforce via § 502(a)," *Id.;* and (3) whether the plaintiff's "state law claim cannot be resolved without an interpretation of the contract governed by Federal Law." *Id.* 65 F.3d at 644.

*Id.* In applying this test, the court "is not limited by the complaint, but may look beyond it to assure [itself] that the plaintiff has not by 'artful pleading' sought to defeat defendant's right to a federal forum." *Id.* 88 F.3d at 1489 (citations omitted).

Under § 502(d)(1), "an employee benefit plan may sue or be sued under this subchapter as an entity." Read in conjunction with § 502(a)(3), the funds, as fiduciaries, are entitled to maintain certain types of civil actions · in their own names. Here, the funds are suing, in their own names, to obtain certain equitable relief and to recover money from the defendants. Thus, application of the first *Rice* factor to the case at hand, reveals that the plaintiffs are eligible to bring a claim under the section.

The second *Rice* element, whether the plaintiffs' cause of action falls within the scope of an ERISA provision that the plaintiff can enforce via § 502(a), also weighs in favor of preemption. A review of plaintiffs' original (or, for that matter, first amended) complaint makes it abundantly clear that plaintiffs' cause of action falls within the scope of ERISA. Specifically, as defendants discussed in their response to plaintiffs' motion to remand:

> [t]he plaintiffs' allegations in this case themselves demonstrate the manner in which the plaintiff's claims are based upon ERISA. The plaintiff funds alleged that they are employee welfare benefit plans and employee benefit plans, and are therefore entitled to bring suit in their own names, under ERISA. First Amended complaint, ¶ 17. The plaintiffs further assert that the health care benefits in question are provided pursuant to the terms and conditions of these benefit plans. *Id.* The plaintiffs also allege that these benefit plans contain subrogation provisions pursuant to which the funds are subrogated to the claims of participants and beneficiaries for health care expenses which were incurred as a result of acts of third-party tortfeasors. *Id.* The plaintiffs allege that the fund trustees are obligated by their fiduciary duties under ERISA to ascertain the legal liability of third parties to pay for health care services paid by the funds and to seek reimbursement to the funds in situations in which such liability exists. First Amended Complaint, ¶ 6. The plaintiffs thus seek to recover the health care expenditures allegedly caused by the defendants' supposedly wrongful acts and to obtain declaratory and equitable relief and restitution. First Amended Complaint, ¶ 17.

Clearly, plaintiffs' can maintain this cause of action on their own behalf and in their own names under ERISA. Even plaintiffs, in their complaint, contemplate this fact as evidenced by the allegations contained therein.[8] As discussed by defendants, plaintiffs even go so far as to allege that ERISA obligates them as fiduciaries to maintain this action against these defendants. Thus, absent ERISA, this cause of action would neither be required nor would it even be possible.

Finally, under the third element of *Rice,* whether resolution of the plaintiffs' state law claims requires an interpretation of the contract governed by federal law, this case ap-

---

8. Several times in their complaint, plaintiffs allege that they have the authority to maintain this action (in their own names) under ERISA.

pears properly to be in this federal forum. Specifically, as indicated above, plaintiffs' seek to enforce the subrogation provisions of the plan. As a result, plaintiffs' state law claims require an interpretation of the contract. In order for the plaintiffs to exercise their subrogation rights, the extent of those rights must be assessed. The only way to properly assess those subrogation rights is to interpret the contract. As a result, it appears that the state law claims cannot be resolved without an interpretation of the contract governed by federal law.

The Court, therefore, finds that all of the elements of the *Rice* test are satisfied. Thus, the Court further finds that plaintiffs' claims against these defendants are completely preempted under § 502(a) of ERISA, and this Court has federal question jurisdiction over this cause of action.

Finally, the Court, in its analysis, considered the parties' supplemental authority submitted in support of their respective positions, including the recent decision from the Northern District of Indiana in *Teamsters Union No. 142 Health and Welfare fund, et al. v. Phillip Morris, Inc., et al.*, 97–CV–667–RM (N.D.Ind.). This Court does not find the Northern District of Indiana's decision to be persuasive and declines to follow its holding.

### CONCLUSION

Accordingly, this Court has original jurisdiction over the parties and this cause of action. Therefore, the court **DENIES** plaintiffs' motion to remand on all grounds.

**IT IS SO ORDERED.**